No. 62.—JOHN G. WINTER, plaintiff in error, vs. THE MUSCO-
GEE RAILROAD COMPANY, defendants in error.

[1.] Where the Judge of the Superior Courts of any one of the Circuits in this State, is a party to a suit, or interested therein, the Judge of any other Circuit has jurisdiction to preside at the trial of the same; notwithstanding the Justices of the Inferior Court *may* preside therein, as provided by the Statute.

[2.] According to the provisions of the Acts of 1799 and 1810, providing for the trial of causes by a Special Jury, the parties are entitled to at least eighteen *impartial* Grand Jurors, from which to select a Special Jury, and when the list of Grand Jurors furnished by the Clerk, shall be reduced to a less number than eighteen, by *challenges for cause*, it is the duty of the Court to direct the Sheriff or his Deputy, to summon from the by-standers or others, such number of persons, who are qualified to serve as Grand Jurors, as will furnish the parties with a pannel of at least eighteen *impartial* Grand Jurors, from which to select a Special Jury.

[3.] When by the By-Law of a Railroad Company, it was required that all the stockholders in the Company, who should fail or refuse to pay up the instalments then called in, or which might be called in by the 10th March then next, should be sued for the full amount of their subscriptions to the Company; and the defendant, who was sued as a stockholder, and who was President of the Company, and present at the time of the adoption of the By-law in question by the Company: *Held*, that a demand of payment of his stock subscription prior to the suit against him, was not necessary.

[4.] Where by an Act of the Legislature, passed in 1845, a Railroad charter was granted to a Company, to build a road between certain points therein designated, and afterwards, in 1848, the defendant subscribed for one hundred shares of stock in the Company, and in 1850, the Legislature passed an Act amending the original charter, by which, the eastern terminus of the road was changed, running the road in a different direction from that contemplated by the original charter, and connecting it with another road: *Held*, that this was such a *material* and *essential* alteration of the original contract, as would release the defendant from his stock subscription, *unless his assent* to such alteration could be shown.

[5.] Corporations can exercise no power over the corporators, beyond those conferred by the charter to which they have subscribed, except on the condition of their *agreement* and *consent*.

[6.] Although alterations may be made in the charter of an incorporated Company, by the procurement of the Company, in furtherance of the designs and objects of the Company; yet in all such cases, due regard must always be had to the *inviolability* of private contracts. The *original* contract of the parties cannot be *materially* or *essentially altered* by an *amended* charter, so as to bind the subscribers thereto, *without their assent*.

Assumpsit, &c., in Muscogee Superior Court.    Tried before Judge POWERS, November Adjourned Term, 1851.

This was a suit by the Muscogee Railroad Company against John G. Winter, upon a subscription for $10,000 of the Stock of the said Company.    When the case was called for a hearing, counsel for Winter moved for a continuance, on the ground of the absence of one Dubois, by whom he expected to prove the location of the present Muscogee Railroad; a fact material to the defence.    The Court refused the motion, holding that he would recognize the fact that the present Muscogee Railroad ran to Fort Valley as a part of the history of the times.    This decision was excepted to by counsel for Winter.

Counsel for Winter then moved to continue the cause, on the ground that Abner Powers, Judge of the Macon Circuit, then presiding in Muscogee Superior Court, had no jurisdiction; the Hon. Alfred Iverson, the Judge of said Court being interested in the cause; in which event the Statute provided that the Justices of the Inferior Court should preside.

The Court overruled the motion and counsel for Winter excepted.

The cause being ordered to trial, a pannel of twenty Grand Jurors were reported in attendance.    Ten of these were challenged for cause, on the ground that they were either individually stockholders, or were citizens of Columbus, which city was a stockholder to the amount of $150,000.    The Court ordered the pannel filled to twenty-three, from which he allowed the challenge to ten for cause.    Counsel for Winter then moved the pannel should be filled with disinterested talesmen to at least eighteen.    Which motion the Court refused; but ordered the Jury to be stricken from the thirteen Jurors remaining on the list.    The plaintiffs being the appellant, struck one, and the remaining Jurors were impannelled to try the cause.    To which decision counsel for Winter excepted.

It appeared from the minutes of the Board of Directors, that on the 12th of February, 1848, John G. Winter being present

and the President of the Company, the following By-law was adopted, viz:

" That the amount of stock of all those of the stockholders in the Muscogee Railroad Company, who fail or refuse to pay up the instalments already called in, or which may be called in by the 10th of March next, shall be held and deemed to be due for the full amount of their and each of their subscriptions for stock in said Company, and that the President do proceed to cause suits to be instituted against all such stockholders as shall fail or refuse as aforesaid, for the full subscriptions for stock in said Company."

Counsel for Winter insisted that suit could not be sustained against him on his subscription, without proof of a demand for the instalments, and a refusal to pay. Which position the Court overruled, and counsel for Winter excepted.

The main question in the cause arose upon the plea of defendant, that the Company had materially changed the route of their road and thus released him from his contract of subscription. Upon this point, the facts appeared as follows :

The subscription was as follows : " We, the undersigned, do hereby subscribe for the number of shares in the capital stock of the Muscogee Railroad Company, which are placed opposite our names ; and agree to pay to said Company the sum of One Hundred Dollars per share in such amounts and ¡ at such times as the same may be called for by the Board of Directors of said Company." Winter subscribed for one hundred shares of the stock.

The Muscogee Railroad Company was incorporated by an Act of the Legislature, passed at its session in 1845, by which the Company were authorized to build a road from the City of Columbus to some point at or near the Macon and Western Rail-Road, between Macon and Atlanta, these being the two termini of the Macon and Western Railroad.

By an Act amendatory of the charter, passed by the General Assembly in February, 1850, the Muscogee Railroad Company were authorized " to connect their Railroad with the South-

western Railroad at Fort Valley or at any point between Fort Valley and the City of Macon."

On the 10th of April, 1851, the following resolutions were passed by the Board of Directors of the Muscogee Railroad Company, John H. Howard being President, (Winter being no longer a member of the Board.)

" *Resolved,* That the Company, in consideration of the subscriptions which have been recently made to build the twenty-one miles of road from Fort Valley to the contemplated east terminus of the Muscogee Railroad, do hereby relinquish to the Southwestern Railroad Company, for the use of said subscribers, all the right that it possesses to occupy the ground selected for the said twenty-one miles of road, and agrees to terminate its road and franchises at the point, fifty miles eastward of Columbus, known as the Wolf-Pen.

" *Resolved,* That this Company hereby pledges itself to unite in an application to the Legislature to have the said twenty-one miles appended to the Southwestern Company, and detached from this Company."

Counsel for Winter requested the Court to charge the Jury— " That the charter of the Muscogee Railroad Company, as it existed at the time of defendant's subscription, is as much a part of the contract as though the same had been embodied in the caption to the subscription paper, and that no material alteration could be made in said contract by the Muscogee Railroad Company or by the defendant, without the consent of both parties.    Therefore, if the Jury find that the road in the course of construction is a different road from that set forth in the original charter, then defendant is not bound for the instalments called in, unless the assent of defendant to such change of route has been proved; or if the Jury find that the terminus of the present road is at a point not contemplated by the original charter, although it may be embraced in the amended charter, yet the defendant is not bound, unless his assent to such amended charter is proven."

The Court refused so to charge, but instructed the Jury— " That the charter constituted a part of the contract of subscrip-

tion, and that an alteration in the route of the road, which would defeat the original object intended by the corporation, would release the defendant, if made without his consent; but if the original object was carried out by the change of route, under an amendment of the charter, obtained against the consent of the defendant, such change of route would not release the defendant; and if the Jury believed that the plaintiffs, by joining the Southwestern Railroad at Fort Valley or any other point, has succeeded in reaching a point at or near the Macon Railroad, this being a terminus in the original charter, it would not in the opinion of the Court, be such an alteration of the contract as would release the defendant. This is matter of fact which the Jury must determine upon; and if from the evidence they believe that the original objects and purposes of the defendant, in subscribing to the first charter and first route, was materially defeated by the amended charter and change of route, then he was not further bound by his subscription, and they should find for the defendant."

To which charge and refusal to charge, counsel for Winter excepted.

Defendant's counsel farther requested the Court to charge the Jury—" That the amendment of the charter could not affect the contract of subscription, because it would be repugnant to the Constitution of the State and of the United States, in this, that it would impair the obligation of the contract."

Which the Court declined giving in charge, saying it was already sufficiently covered by his charge. To this decision Winter excepted.

Upon these several exceptions error has been assigned.

Moses, for plaintiff in error.

H. Holt, for defendants in error.

*By the Court.*—Warner, J. delivering the opinion.

The first ground of error assigned on the record in this case,

is the refusal of the Court below to continue the cause, on account of the absence of Dubois, a witness for the defendant, by whom he expected to prove the present location of the Muscogee Railroad; the Court holding, that it would recognize the existence of the fact which the defendant desired to prove by the witness, that the present route of the Railroad ran from Columbus to Fort Valley. According to the rule which this Court has heretofore adopted, we shall not control the *discretion* of the Court, in refusing to grant a continuance of the cause on the state of facts presented by this record; there is not such an *abuse* of the discretion confided to the Court below as will authorize this Court to control it.

[1.] The second ground of error taken in the record is, that Judge *Powers*, who is the Judge of the Macon Circuit, had no jurisdiction to preside at the trial of the cause; inasmuch as Judge *Iverson*, who is the Judge of the Chattahoochee Circuit, is interested in the cause; that the Act of 5th December, 1801, provides, "that in all cases brought in the Superior Courts or any of them, where either of the Judges thereof shall be a party, or interested therein, it shall be the duty of three or more of the Justices of the Inferior Court to preside at the trial of the same" *Prince*, 433. By the Act of 8th December, 1806, the Judges of the Superior Courts of this State are authorized to *alternate* in their respective districts, *any law to the contrary notwithstanding*. *Prince*, 434. Because the Justices of the Inferior Court *may* preside at the trial of a cause in which the Judge of the Superior Courts of the circuit for which he was elected, is a party or interested therein, it does not necessarily follow that a Judge of the Superior Courts of another circuit *may not*. The Judge of the Macon Circuit had the power and authority, under the Constitution and laws of this State, to preside at and hold a Court in any County of the Chattahooche Circuit, in the absence of the Judge of the latter circuit, or when he is a party to, or interested in any cause pending therein. A Judge of the Superior Courts of any one circuit in this State, has the power and authority to hold a Court in any other circuit of the State, whenever circumstances make it necessary and proper that he should

do so. The jurisdiction is *general* throughout the State, and not limited to the particular circuit for which he may have been elected. The Act authorizing the Justices of the Inferior Court to preside in cases where the Judge of the Superior Court is a party or interested, was intended to prevent a *failure of justice*, whenever the Judge of the Superior Court should fail or refuse to call in the Judge of another circuit for the trial of such causes.

[2.] The third ground of error taken in the record is, that the Court refused the defendant a pannel of at least eighteen *impartial* Jurors, from which to select a Special Jury for the trial of his cause.

It appears there were but twenty Grand Jurors in attendance upon the Court; whereupon the Court ordered the pannel filled up to twenty-three; ten of the twenty-three were challenged for *cause* by the defendant, which was allowed by the Court, leaving only thirteen from which to select a Special Jury; the plaintiff being the appellant, struck off one of the thirteen, and the defendant was compelled to accept the remaining twelve to try his cause, without having had any strike at all. By the 41st section of the Judiciary Act of 1799, it is declared that "no Grand Jury shall consist of less than eighteen or more than twenty-three." *Prince*, 429. The Act of 1810 declares, that "All Special Jurors shall be taken from the Grand Jury list of the County, and struck in the presence of the Court, in the following manner: The Clerk shall produce a list of the Grand Jurors present, and there impannelled, from which the parties, plaintiff and defendant, or their attorney, may strike out one alternately, until there shall be but twelve Jurors left, who shall forthwith be impannelled and sworn as Special Jurors, to try the appeal cause; and in all cases, the appellant shall strike first." *Prince*, 435.

The *Grand Jurors* on the Clerk's list, from which the Special Jury are to be selected, by the Act of 1810, must be viewed in the light of the Common Law, which requires *impartial* Jurors; and when we construe that Act, in connexion with the Judiciary Act of 1799, providing for the qualification, summoning, and impannelling of Grand and Petit Jurors, the *intention* of the

Legislature is quite apparent, that the parties are entitled to at least eighteen *impartial* Grand Jurors, from which to select a *Special* Jury for the trial of an appeal cause.  The 44th section of the Judiciary Act of 1799, after specifying in what manner Grand and Petit Jurors shall be fined for non-attendance, &c., goes on to declare that, "When from *challenge,* or otherwise, there shall not be a sufficient number of Jurors to determine *any civil* or criminal cause, the Court may order the Sheriff or his Deputy, to summon by-standers or others, qualified as hereinbefore required, for the trial of such cause or causes, sufficient to complete the pannel, &c." *Prince,* 430.  The list of the Grand Jury furnished by the Clerk having been reduced to thirteen by *challenge for cause,* it was the duty of the Court to have directed the Sheriff or his Deputy to have summoned from the by-standers or others, such number of persons, who were *qualified to serve as Grand Jurors,* as would furnish the parties with a pannel of at least eighteen *impartial* Jurors, from which to select a Special Jury for the trial of that particular cause; and in our judgment it was error in the Court, in refusing to do so.

[3.] The next ground of error is, that the Court erred in deciding that suit could be maintained against the defendant, without evidence of a *demand* of payment of the instalments due upon his subscription, &c.  It is apparent on the face of the record, that the defendant was President of the Muscogee Railroad Company, and was present on the 12th February, 1848, at a meeting of the Board, when a By-law was adopted requiring suit to be instituted against *all* the stockholders in the Company, who should fail or refuse to pay up the instalments then called in, or which might be called in by the 10th March then next, for the full amount of their subscriptions for stock in the Company.  The defendant *knew* that he had failed and refused to pay the instalments called in, and that his *whole subscription* was due, and would be sued for, according to the terms of the By-law of the Company, of which he had ample notice; therefore, no *demand* was necessary, according to the facts contained in this record.

[4.] The great question made in this case is, whether the

defendant was released from the payment of his stock subscription to the Company, in consequence of a change of the route of the road, without his *assent*.    In December, 1845, an Act was passed by the General Assembly of this State, incorporating the Muscogee Railroad Company, and authorizing said Company to construct a Railroad from the City of Columbus to some point "at or near the Monroe Railroad *from Macon* to the *terminus* of the Western and Atlantic Railroad in DeKalb County, to be selected and determined upon by the Directors hereinafter authorized to be elected, &c." (*See pamphlet Acts*, 1845, 116.) The defendant in the Court below and plaintiff in error here, on the 1st day of Jan. 1848, became a subscriber for one hundred shares of the stock in said Company, and refusing to pay the same, suit was instituted against him for the recovery thereof. The main ground of defence insisted on by the defendant against the payment of his stock subscription is, that the route of the road was altered and changed by an Act of the Legislature, passed in February, 1850, *without his assent*.

By the original Act of Incorporation, the road was to be constructed from the City of Columbus, to some point at or near the Monroe Railroad, *from Macon* to the terminus of the Western and Atlantic Railroad in DeKalb County.   The eastern terminus of the road was to be at or near the Monroe Railroad, at any point which the Directors might select *between* the City of Macon and the terminus of the Western and Atlantic Railroad in DeKalb County; that is to say, the eastern terminus of the Muscogee Railroad was not to be further north than the *terminus* of the Western and Atlantic Railroad in DeKalb County; nor further south than the *terminus* of the Monroe Railroad at Macon; but was to terminate at some point at or near the Monroe Railroad *from* Macon to the *terminus* of the Western and Atlantic Rail Road in DeKalb County.   By the Act of 1850, the Muscogee Railroad Company were authorized and empowered to connect their road with the Southwestern Railroad at Fort Valley, or at any point between Fort Valley and the City of Macon. (*See pamphlet Acts*, 1850, 245.)   In pursuance of this latter Act, the Board of Directors of the Musco-

gee Railroad Company, on the 10th April, 1851, adopted and passed the following resolutions :

"*Resolved,* That the Company, in consideration of the subscriptions which have been recently made to build the twenty-one miles of road from Fort Valley to the contemplated east terminus of the Muscogee Railroad, do hereby relinquish to the Southwestern Railroad Company, for the use of said subscribers, all the right that it possesses to occupy the ground selected for the twenty-one miles of road, and agrees *to terminate its road and franchises at the point, fifty miles east of Columbus, known as the Wolf-Pen.*"

" *Resolved,* That this Company hereby pledges itself to unite in an application to the Legislature, to have the said twenty-one miles appended to the Southwestern Company, and detached from this Company."

When these two resolutions were passed, the defendant was not a member of the Board, and so far from *his assent* to the change of the route of the road appearing on the face of the record, there is evidence of *his dissent;* the record evidently shows, that the defendant was in favor of the Barnesville route, and opposed to the present route of the road.

Wm. L. Jeter, a witness introduced by the plaintiff, to prove the declarations of the defendant in regard to his stock subscription, states that he "heard the defendant say about a year ago, that he was sued for $10,000 stock in the Muscogee Railroad Company; manifested much feeling, and said he did not think he ought to pay it, as the road being built, was *essentially different* from the *original road.*" Calvin P. Stratton, a witness introduced by the plaintiff, testified among other things, " that in 1847, at a meeting of the citizens of Columbus in said city, he heard the defendant, as a stockholder in the Muscogee Railroad Company, urge the locating of the road to Barnesville; that at the same meeting, Major John H. Howard urged the Upatoie, or southern route; that the meeting determined on the Barnesville route, and Major Howard said, if it went to Barnesville, he would be damn'd if he would pay his subscription, and defendant said, he would make him; that at the same meeting,

in urging the Barnesville route, the defendant said, I am in for $10,000, and if the road goes to Barnesville, I will subscribe for $40,000 more, but if it goes the *other route*, I will have nothing more to do with it."

The Company have adopted the Upatoie, or southern route, for the location of their road, and the same is now being completed over that route.    The Act of 1850 authorized the Company to connect their road with the Southwestern road, at Fort Valley, a point some twenty-five or thirty miles southwest *from Macon*, and the Company have by resolution, abandoned twenty-one miles of their road west of Fort Valley, and have agreed to terminate it at a point fifty miles east of Columbus, known as the Wolf-Pen.    The present Muscogee Railroad is only to be extended fifty miles east of Columbus, in the direction of Fort Valley, and its eastern terminus is to be the Southwestern Railroad, at the Wolf-Pen.

The *fact*, that the present route of the Muscogee Railroad, runs from Columbus to Fort Valley, was conceded by the Court at the trial; that is to say, the *eastern terminus* of the Muscogee Railroad, by the amended charter, was at Fort Valley, and the road was being built in *that direction*.    The Act of the last Legislature authorizing the connexion of the Muscogee Railroad with the Southwestern Railroad at the Wolf-Pen, (not having been yet published,) is not before us, but it was assumed on the argument to have been done, in pursuance of the resolution of the Company, passed on the 10th April, 1851, as heretofore recited. After the evidence had closed, the defendant by his counsel, requested the Court to charge the Jury—" That the charter of the Muscogee Railroad Company, as it existed at the time of the defendant's subscription, is as much a part of the contract, as though the same had been embodied in the caption to the subscription paper, and that no *material* alteration could be made in said contract by the Muscogee Railroad Company, or by the defendant, without the consent of both parties.

Therefore, if the Jury find that the road now in the course of construction is a different road from that set forth in the original charter, the defendant is not bound for the instalments called in,

unless *the assent* to such change of route by the defendant, has been proved; or if the Jury find that the *terminus of the present road* is at a point not contemplated by the original charter, although it may be embraced in the *amended* charter; yet, the defendant is not bound, unless *his assent* to such amended charter is proved."

The Court refused to charge the Jury as requested, but on the contrary charged them—" That the charter constituted a part of the contract of subscription, and that an alteration in the route of the road, which would defeat the original object intended by the corporation, would release the defendant, if made without his consent; but if the original object was carried out by the change of route under an amendment of the charter, obtained against the consent of the defendant, such change of route would not release the defendant; and if the Jury believed that the plaintiff, by *joining the Southwestern road at Fort Valley, or any other point, has succeeded in reaching a point at or near the Monroe Railroad, this being a terminus in the original charter, it would not in the opinion of the Court, be such an alteration of the contract as would release the defendant.* This is a matter of fact, which the Jury must determine upon, and if from the evidence, they believe that the original objects and purposes of the defendant, in subscribing to the first charter and first route, was materially defeated by the amended charter and change of route, then he was not further bound for his subscription, and they should find for the defendant." Whereupon the defendant, by his counsel, excepted to the refusal of the Court to charge the Jury as requested, and to the charge as given.

[5.] Was the alteration of the eastern terminus of the Muscogee Railroad at or near the Monroe Railroad, from Macon to the terminus of the Western and Atlantic Railroad in De-Kalb County, to the Southwestern Railroad at Fort Valley, or the Wolf-Pen, without *his assent*, such a *material* alteration of the defendant's contract, under the original charter, as will release him from the payment of his stock subscription thereto?

The road, by the alteration, is shortened in distance, runs through different neighborhoods, and is necessarily made *de-*

*pendent on another Company,* to reach *near* the point contemplated by the original charter.

The original charter contemplated a road to be built by the Company, from Columbus to some point at, or near the Monroe Railroad, beween Macon and the terminus of the Western and Atlantic Road, *wholly independent of the Southwestern or any other Railroad;* and in our judgment, the necessary change of the route, to reach the present eastern terminus of the Muscogee Railroad, as provided for by the amended charter, is an *essential alteration* of the defendant's contract, and releases him from its performance, unless *his assent* to such alteration be shown. In the case of The Middlesex Turnpike Corporation *vs.* Locke, (8*th Mass. Rep.* 268,) a Turnpike Road Company had been incorporated in 1805, and the defendant subscribed for stock therein in July of the same year, and afterwards, in the year 1806, the corporation procured an Act of the Legislature to be passed, altering the course of the turnpike road, from "Bisket Bridge in Tyngsborough, to the fork in Bedford;" and the road was altered in pursuance of the last mentioned Statute. The Act of 1806 was passed on the application of the directors of the corporation, and with the assent of said corporation, at a meeting thereof, duly holden. The point made by the counsel for the defendant in that case was, that he never *consented* to become a stockholder in the turnpike company, as it was *in fact located and made ;* that the corporation had *no right* to transfer his subscription for the promotion of one road to that of another, without *his personal assent ;* and so the Court decided. The Court say—" The plaintiffs rely on an *express contract,* and they are bound to prove it as they allege it. Here the proof is of an engagement to pay assessments for making a turnpike in a certain *specified direction,* and of the making a turnpike in a *different direction.* The defendant may truly say, *non haec in federa veni.* He was not bound by the application of the ·directors to the Legislature for the alteration of the course of the road, nor by the consent of the corporation thereto." This case is cited with approbation in *The Hartford & New Haven Railroad Company vs. Croswell, 5th Hill's N. York Rep.* 386. In this latter case, the

principle is asserted and maintained, that corporations can exercise no power over the corporators, beyond those conferred *by the charter to which they have subscribed*, except on the condition of their *agreement* or *consent*.    See also *The Middlesex Turnpike Corporation vs. Swan*, 10 *Mass. Rep.* 385.

In the case now under consideration, the facts are undisputed, that by the amended charter, and the action of the Company in pursuance thereof, the present eastern terminus of the Muscogee Railroad is at the Wolf-Pen, fifty miles from Columbus; and that the eastern terminus of the road, as contemplated by the original charter, (to wit,) at or near the Monroe Railroad, from Macon, &c., cannot be reached, except by running several miles over the Southwestern road.    Upon this state of facts, the Court below charged the Jury as a matter of law, "that if they believed that the plaintiff, by joining the Southwestern road at Fort Valley, or *any other point*, has succeeded in reaching a point, at or near the Monroe Railroad, this being the terminus in the original charter, it would not, in the opinion of the Court, be such an alteration of the contract as would release the defendant."    It is true, the Court subsequently stated to the Jury, that this was a question of *fact* for their consideration; but if the Court intended to say, "that if the plaintiff, *by joining the Southwestern road* at Fort Valley, or at the Wolf-Pen, has succeeded in reaching a point at, or near the Monroe Railroad, as contemplated by the original charter, it would not be such an *alteration of the contract* as would *release the defendant*," was *a fact for their consideration*, we entirely dissent from that view of it.    *The fact*, as disclosed by the record is, that the Muscogee Railroad Company, under the provisions of the amended charter, have connected their road with the Southwestern road at the Wolf-Pen, fifty miles east of Columbus, and cannot reach the Monroe Railroad *from Macon*, except by running some forty or fifty miles over the Southwestern road.

Whether this alteration of the *terminus* of the road, as contemplated by the original charter, and its connexion with the Southwestern road, without the *assent* of the defendant, was such an alteration of the contract as would release the defendant from

his stock subscription, was a *question of law*, arising from the facts proved, and the Court decided the law against the defendant, which, in our judgment, was error. With equal propriety might it be said, that the defendant would be bound to pay his subscription to the original charter, if by the *amended* charter, the Company had been authorized to connect their road with the Montgomery and West Point road, and by that means have reached the Monroe Railroad by running over the West Point and LaGrange Railroads, *from Columbus.*

By that arrangement, the plaintiff, by joining the Montgomery and West Point road at Opelika, or any other point thereon, might "have succeeded in reaching a point at, or near the Monroe Railroad, this being a terminus in the original charter;" but who will say that the defendant contemplated the building any such road, when he subscribed for stock under the original charter?

By the amended charter, authorizing the Muscogee Railroad to connect with the Southwestern road, the length of the road is shortened, thereby lessening the rates of freight, which may have been an important element of the defendant's contract under the original charter; besides, the Company cannot now *control the rates of freight between the points specified in the original charter*, but are dependent on the will and action of *another Company.*

The original charter contemplated an independent road from Columbus to some point at, or near the Monroe Railroad, between the points designated therein, to be controlled and managed by the Company itself, independent of any other Company; and under such a charter, the defendant subscribed for stock to build the road; but he never subscribed for stock to build a road from Columbus, to connect with the Southwestern Railroad at the Wolf-Pen, fifty miles from Columbus. When called on to pay his subscription for the building of such a road, without *his assent*, he may also truly say, "*non haec in fædera veni.*"

[6.] We do not pretend to deny, that alterations may be made in the charter of an incorporated Company, by the procurement of the Company, in furtherance of the design and objects of the

Company; but in all such cases, due regard must always be had to the *inviolability* of private contracts. The *original contract* of the parties cannot be *materially* or *essentially altered* by an amended charter, so as to bind the subscribers thereto, without their *assent.* In view of the facts of this case, we are of the opinion that the Court below erred in charging the Jury as stated in the record, and in not charging them as requested by the counsel for the defendant. The charge, as requested, presented the law of the case in an unexceptionable point of view, and ought to have been so given to the Jury by the Court. The second request to charge the Jury, made by the counsel for defendant, as stated in the record, is substantially included in the first ; therefore, we express no opinion in regard to that.

Let the judgment of the Court below be reversed.