

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Fred C. Branson
Commissioner
Department of Banking
Austin, Texas

Dear Sir:

Opinion No. O-1542
Re: Interpretation of S. B. 268
with reference to Morris Plan
Banks.

Your letter requesting the opinion of this
Department with reference to the above matter, with
related questions, has been received by this Department.

With reference to Senate Bill 268, passed by
the Forty-sixth Legislature, you ask the following ques-
tions:

"1. Does the amendment referred to have
the effect to make the institutions incorporat-
ed prior thereto as loan and investment com-
panies, corporations 'with banking and discount-
ing privileges' upon compliance with the require-
ments of the amendment?

"2. In the event such a corporation,
organized prior to the amendment, has not
actually had its full capital stock subscrib-
ed and actually paid in full in cash, would
such subscription and payment in full prior
to the corporation's accepting the powers
under the amendment be sufficient to constitute
such institution a corporation 'with banking
and discounting privileges' under our Consti-
tution upon proper certificate being made to
the Banking Commissioner?

"3. Could the certificate of adoption of
banking powers be lawfully made by the Board
of Directors and certified as such, or should it

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Fred C. Branson, Page 2

be made only after the same has been authorized
by a stockholders meeting in annual session, or
called for that purpose?"

Article 16, Section 16 of the Texas Constitution
provides:

"The Legislature shall, by general laws,
authorize the incorporation of corporate bodies
with banking and discounting privileges, and
shall provide for a system of State supervision,
regulation and control of such bodies which will
adequately protect and secure the depositors
and creditors thereof.

"No such corporate body shall be charter-
ed until all of the authorized capital stock
has been subscribed and paid for in full in
cash. Such body corporate shall not be author-
ized to engage in business at more than one
place, which shall be designated in its charter.

"No foreign corporation, other than the
national banks of the United States, shall be
permitted to exercise banking or discounting
privileges in this State. (Section 16, Article
16, adopted election August 23, 1937.)"

For the purposes of this opinion, the amendment
adopted August 23, 1937, to Article 16, Section 16, of our
Constitution is of no significance. The amendment simply
eliminated a former provision of said Article and Section
pertaining to the liability of shareholders in such banks.

Under this constitutional sanction, the Legis-
lature passed laws authorizing the incorporation of cor-
porate bodies with banking and discounting privileges.
Title 16; Article 342 through Article 548, inclusive, Re-
vised Civil Statutes of Texas.

What is now Chapter 9 of Title 16, Article 542
through Article 548, inclusive, Revised Civil Statutes of
Texas, was enacted by the Thirty-sixth Legislature in 1917.
The chapter title carried in Vernon's Annotated Civil Sta-
tutes, 1925, is "Morris Plan Banks", although the term is
a misnomer, there being no such thing as a Morris Plan
Bank known to, or defined by, our statutes. Section 1 of

Hon. Fred C. Branson, Page 3

the Act as passed provided:

"The term 'loan and investment company',
as used in this Chapter, means any corporation
formed under the provisions of this law..."

Subsequently, in 1937, it was held by the San
Antonio Court of Civil Appeals in the case of Kaliski vs.
Gossett, 109 SW (2nd) 540, that corporations formed under
Chapter 9, supra, were not corporations with banking and
discounting privileges.

The Forty-sixth Legislature thereafter passed
Senate Bill 268, which amended Article 545, Section 2,
Chapter 9, supra, to read:

"2. To receive money on time deposits,
and to purchase, sell, discount, or nego-
tiate bonds, notes, certificates of invest-
ment and choses in action for the payment
of money at a time either fixed or uncertain,
and to receive payment therefor in install-
ments, or otherwise, with or without an
allowance of interest upon such installments.
To purchase stock in Federal Deposit Insur-
ance Corporation."

There was also added to such Chapter, by Senate
Bill 268, a new Article, No. 548a, which provides:

"All corporations now chartered under
the provisions of this Chapter may adopt
the powers herein granted by filing a certi-
ficate to such effect with the Commission of
Banking, provided, however, that the incor-
poration of corporations in the future under
this Chapter shall make application to the
State Banking Board and be governed by the
provisions of Chapter 2 of this Title."

We, therefore, have the questions posed by you,
set out above, with reference to the interpretation of
Senate Bill No. 268.

The case of Kaliski vs. Gossett, supra, being

Hon. Fred C. Branson, Page 4

the only decision of our courts construing the old provisions of Chapter 9, and holding that such did not confer banking and discount privileges, under the constitution, Article 16, Section 16, upon the corporations created thereunder, we shall first analyze such opinion and the reasons given by the court for arriving at its decision.

The reasoning of the court was based upon five general propositions:

First, the court pointed out that the caption of the act showed it to be one concerning loan and investment companies, the caption not being broad enough to include the powers of banking and discounting.

Second, the court pointed out that such corporation may be organized in the same manner as corporations for profit under and by virtue of Title 25 of the Revised Statutes, which title is now title 32, Revised Civil Statutes, 1925, Article 1302, et seq. In this connection, the opinion reads: "If it was the intention of the Legislature to authorize the creation of a banking corporation, the act should have provided for their organization under and by virtue of the title relating to banks and banking."

Third, the court says: "The title on private corporations authorizes the creation of corporations with fifty per cent of the capital stock paid in while the constitution, section 16, article 16, requires that banking corporations can only be created when all stock has been paid for in cash."

Fourth, the court points out that certain statutes applicable to banking corporations were excluded, by implication, as to their applicability to the corporations created under Chapter 9.

Fifth, the court further said: "But we are of the opinion that the law did not grant to the Peoples Industrial Bank banking and discounting privileges." The court bases its conclusion on this point primarily upon the lack of authority under Chapter 9 of the corporations created thereunder to receive deposits.

It will be noted that the corporations taking advantage of the new provisions under Senate Bill 268 are not given the same or as comprehensive powers, as those under the other chapters of Title 16, pertaining to the usual banking corporations. They are, however, under the supervision of the Banking Commissioner, by

virtue of Article 548. Also, new corporations formed thereunder are governed by Chapter 2 of Title 16, the chapter dealing with the formation of the recognized banking institutions; whereas, old corporations heretofore formed under Chapter 9, in the same manner as corporations for profit, may, under new Article 548a, take advantage of the new powers by filing a certificate to such effect with the Department of Banking.

Accordingly, we still have, notwithstanding Senate Bill 268, the following circumstances pointed out by the court in the opinion of Kaliski vs. Gossett, supra: the caption of the Act remains the same; no provision is made for the payment of all of the authorized capital stock, as a condition precedent to qualification under the new statute, as to the corporations in existence at the time of the passage of Senate Bill 268 and the effective date of the act; and numerous of the statutes applicable to banking corporations generally are excluded from application to the new and old corporations formed under Chapter 9, by implication.

Hence, the query: Notwithstanding which, is the effect of Senate Bill 268 to confer banking and discount privileges upon such corporations?

We believe the correct rule in this connection is stated in American Jurisprudence, Vol. 7, at page 26:

"Furthermore, a designation by statute as to the character of a business is not necessarily conclusive. A legislative declaration in an act that a corporation under it shall not be deemed a bank or a company having or exercising banking powers, does not affect the powers conferred or limit the authority of the corporation; and if any section of the act in express words confers banking powers, the character of the corporation is to be determined thereby."

We, therefore, at this point shall seek to ascertain the meaning of the term "banking and discounting privileges", as used in the Texas Constitution.

The court in Kaliski vs. Gossett, supra, quotes the following language with approval from the case of In

Hon. Fred C. Branson, Page 6

Re Prudence Company, (C.C.A.) 79 F. (2nd) 77, 79 as the definition of a bank:

"Strictly speaking, the term 'bank' implies a place for the deposit of money, as that is the most obvious purpose of such an institution.... and all of the cases, so far as we are advised, which have construed the words "banking corporation' as used in the Bankruptcy Act, have regarded the legal power to receive deposits as the essential thing...."

We quote from Texas Jurisprudence, Vol. 6, at page 142:

"The business of banking has always been understood to include, as a principal funtion, the reception of deposits."

Mr. Justice Holmes, of the United States Supreme Court, in the case of Engel vs. O'Malley, 219 U. S. 128 says:

"The receipt of money by a bank, although it only creates a debt, is in a popular sense the receipt of money for safe keeping, hence the depositor can draw it out again at such time and in such sums as he chooses.... One form, at least, of the business aimed at, and, on the face of the bill, that carried on by the plaintiffs is a branch of the banking business...."

We read again from the opinion in the case of In Re Prudence Company, 79 F. (2nd) 77, cited in the opinion of Kaliski vs. Gossett, supra, as follows:

"Hence the debtor does not possess the power to receive deposits, which is generally recognized as the essential characteristic of a banking business. In Oulton vs. German Savings & Loan Association, 17 Wall. 108, 118, 21 L. Ed. 618, Mr. Justice Clifford stated that, 'Strictly speaking, the term bank implies a place for the deposit of money, as that is the most obvious purpose

of such an institution.' And all the
cases, so far as we are advised, which
have construed the words 'banking corpor-
ation' as used in the Bankruptcy Act, have
regarded the legal power to receive deposits as
the essential thing. See Gamble vs. Daniel,
39 F. (2nd) 447, 450; State of Kansas vs.
Hayes, 62 F. (2nd) 597; Clemons vs. Liberty
Savings & Real Estate Corp., 61 F. (2nd)
448; Woolsey vs. Security Trust Co., 74 F.
(2nd) 334, 97 A. L. R. 1081."

In American Jurisprudence, Vol. 7, at page
24, we read:

"Strictly speaking, the term 'bank' im-
plies a place for the deposit of money. In
its more enlarged sense, a bank may be defin-
ed as an institution, generally incorporated,
authorized to receive deposits of money; to
lend money and issue promissory notes, usually
known by the name of bank notes, or to perform
some one or more of these functions.... Ac-
cordingly, banks, in the commercial sense, are
of three kinds: (1) of deposit, (2) of dis-
count, (3) of circulation."

We read further from Texas Jurisprudence, Vol.
6, at page 142:

"As to what are 'banking or discounting
privileges' within the meaning of the Consti-
tution, there appears no Texas decisions which
really aid the investigator."

We have only the definite inference in the opin-
ion of Kaliski vs. Gossett, supra, that the power to re-
ceive deposits, together with the other powers conferred
upon corporations created under Chapter 9, would be suf-
ficient to constitute such corporations as being ones with
'banking and discounting privileges' with the Constitution.

Notwithstanding which, however, we believe the
conclusion inescapable, under the authority cited, that
the amendment embodied in Senate Bill 268 constitutes the
corporations created under Chapter 9, supra, corporate

Hon. Fred C. Branson, Page 8

bodies with banking and discounting privileges, within
the meaning of the constitution upon their compliance
with the requirements of the act itself, the amendments
thereto, and the constitution.

In answer to the second question propounded
by you, we point out that as to new corporations formed
under Chapter 9, supra, as amended, such are governed by
Chapter 2 of Title 18, Revised Civil Statutes, in the
same manner as ordinary banking corporations. Articles
377 and 378 of such Chapter embody the constitutional
requirements that all capital stock be paid for in full
in cash before the granting of the charter to such cor-
poration.

As to corporations in existence at the time
of the effective date of Senate Bill 268, such corpora-
tions are authorized to adopt the powers granted by the
amendment, by filing a certificate to such effect with
the Commissioner of Banking. No provision is made per-
taining to the requirement of the constitution as to the
capital stock, and under Article 543, supra, the general
corporation statute controlled the original method of
organization of such corporations.

It is manifest, however, under the constitution,
Article 16, Section 16, that no corporation can exercise
banking and discount privileges unless all of the author-
ized capital stock has been subscribed and paid for in
full in cash. It follows that no corporation in exis-
tence at the time of the effective date of Senate Bill
268 could qualify thereunder and be invested with bank-
ing and discount privileges, unless such corporation has
in all respects complied with the constitutional require-
ments. In our opinion, Article 16, Section 16, of the
Constitution is self-enacting (Kaliski vs. Gossett,
supra) and therefore, such a corporation could qualify
under Senate Bill 268 at such time as all of its author-
ized capital stock had been subscribed and paid for in
full in cash.

We further point out that the existence of
these facts is a condition precedent to the right of a
corporation to be chartered under the constitution;
accordingly, we suggest that you should require, before
permitting such corporations to qualify, the same method
of establishment of these facts as is required before

Hon. Fred C. Branson, Page 9

the granting of a charter to the ordinary banking corporation.

As to your third question, we believe the general rule in such matters is correctly stated as follows in Texas. Jur., Vol. 10, pages 662 and 956:

"The corporate organization is subject to control by the stockholders as to the following matters: (a) alteration of the by-laws; (b) alteration of the number of directors; (c) increase or decrease of capital stock; (d) voluntary dissolution of the company; (e) any fundamental alteration of the corporate purpose, structure and properties. As to these matters, the control of the corporation is vested in the stockholders by law, and their right in this regard cannot be taken away by the agreement organizing the corporation. In all other matters, it seems that the voluntary associates forming the company are at liberty to regulate the powers of stockholders by the organic contract of association." (underscoring ours)

At Page 956:

"As we have seen, a corporation has its origin in the compact of the individuals who compose it. The general power of the directorate, heretofore mentioned, is subject to the same limitation; that is to say, the directors power to perform all corporate acts refers to ordinary business transactions; they have no power to destroy or to modify the corporation organization."

In the case of Clark vs. Brown, 108 SW 425, 445, the court says:

"The principle of law upon which these rules of construction are based (1) that the power to make fundamental changes in the

identity or in the plan or policy of a corporation is not conferred upon its officers simply in giving them the general power of management, but is reserved to the individual stockholders; (2) that such fundamental changes in the policy or identity, of the organization are not within the terms of the organic compact, and involve the introduction of new terms, creating new and different liabilities, and subjecting to different risks from those attending the compact into which the shareholders had entered by becoming members."

Likewise, in Thompson on Corporations, 3rd Ed., we read in Vol. 1, at page 512:

"As shown in another section of this chapter, an amendment which makes a fundamental change in the nature of the corporation will not be binding unless accepted.. Fundamental, radical, or vital amendments to a charter must be unanimously accepted by the stockholders. Where the whole body of stockholders or other persons in interest, compose the corporation, the right of assenting to any proposed change in the charter resides in them, and not in the board of directors, which is charged with the exercise of the corporate powers. In their capacity as managers, they have no authority either to call for or assent to a change of the corporate constitution.... Notwithstanding the general rule that acceptance of amendments and alterations must be by the stockholders..."

And in Vol. 2, at page 740, para. 1288, from the same authority, we quote:

"Since, on principles already referred to, the directors have no power to make constituent changes in the corporation, it follows for like reasons that they have no implied authority to accept an amendment to the charter of the corporation where the amendment operates to make any fundamental change in the character or constitution of

Hon. Fred C. Branson, Page 11

the corporation. The rule also applies if
the proposed amendment confers new powers
or privileges not within the general powers
conferred by the original charter or by the
stockholders. The stockholders alone are
empowered to accept such amendment. This
principle is stated in the syllabus of a
Federal Court as follows:

"'Board of Directors of a
corporation, who, under the char-
ter, are vested with "all the
corporate powers" of the company,
may not, as a general rule, have
the incidental power of accepting
from the Legislature an amendment
to the charter, the effect of which
is to enlarge beyond the wish of
the stockholders the extent of the
company's investments.'"

We find another succinct statement of the rule
in the case of the Attorney General vs. Accomodation Bank
of Louisiana, 26 La. Ann. 288, wherein the Supreme Court
of Louisiana says:

"The alteration proposed by this Act to
the charter of the Loan & Pledge Association
fundamentally changes its character. Instead
of merely to loan money at a certain rate of
interest on movable property, the corporation,
under the amendment proposed, is authorized
to receive deposits and to do a general bank-
ing business. The acceptance of this grant
should have been by the unanimous consent of
the stockholders. The assent of a majority
which was given, was not sufficient.

"Legislative alterations of the charter
of a private corporation when merely auxiliary
and not fundamental, may be accepted by a
majority of the corporators, and such accep-
tance will bind the whole; but if such altera-
tions be fundamental, the acceptance must be
unanimous. Woolfolk vs. Union Bank, 3 Caldwell
Rep. 489: 'The assent of the subscribers must
be obtained to any amendment of the charter

Hon. Fred C. Branson, Page 12

which materially and essentially alters the
condition upon which the original contract
of the parties was made.'  11 Ga. 438; see
also 2 Metcalf 314."

Clearly, the change in the corporation upon an
acceptance of the additional powers granted to such cor-
poration under and by virtue of Senate Bill 268, is
material, vital, and fundamental.  New powers are to be
exercised and additional liabilities will ensue.  The
changes would not be immaterial or superficial ones; on
the contrary, they go into the fundamental activities,
purposes, and transactions of the corporation.

It is, therefore, our opinion that the certifi-
cate of adoption of the banking powers conferred upon
existing corporations by Senate Bill 268 should be made
only after the same has been authorized by a stockholders
meeting either in the annual meeting or in a meeting call-
ed for such specific purpose.

We do not undertake in this opinion to go into
the question of the delegation of authority to the Board
of Directors by the constitution or by-laws of any such
corporation; neither do we go into the question of whether
or not the adoption of the added power under Senate Bill
268 must be by a unanimous vote of the stockholders or
can be by a majority vote thereof.  We simply hold, as
a general proposition, that the adoption of such added
powers by the Board of Directors would be an insufficient
acceptance thereof, as required by Senate Bill 268, on
the part of the corporation, but that such should be done
by the stockholders composing the corporate body.

We trust this answers your question satisfac-
torily, and we remain

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED NOV 7, 1939

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

By _Wm. J. Fanning_
Wm. J. Fanning
Assistant

By _Zollie C. Steakley_
Zollie C. Steakley

APPROVED
OPINION
COMMITTEE
BY _BWB_
CHAIRMAN

ZCS:AW