Bailey vs. The State.

No. 143.—PIERCE BAILEY, plaintiff in error, vs. THE STATE OF GEORGIA.

[1.] The Act of 1856, "declaring who are liable to serve as Jurors in criminal cases," &c. applies as well to cases happening before its passage as to those happening after its passage.

Manslaughter, in Taliaferro Superior Court. Tried before Judge THOMAS, August Term, 1856.

Pierce Bailey stood indicted for the murder of a negro, his slave ; he was convicted of voluntary manslaughter. The error assigned is, that the Court impannelled the Jury under the Act of 1843, and refused to impannel them under the Act of 1856—the offence having been committed prior to the passage of the latter Act.

CONE, for plaintiff in error.

Sol. Gen. DANIEL, for defendant in error.

By the Court.—BENNING, J. delivering the opinion.

The Legislature, at its last session, passed an Act entitled "An Act declaring who are qualified to serve as Jurors in criminal cases—regulating the manner of impannelling a Jury in such cases—declaring who are competent Jurors, and the mode and manner of ascertaining such competency—and for other purposes therein mentioned."

The question is, whether the Legislature intended the Act to apply, as well to cases happening before its passage as to cases happening after its passage. The Court below held that the Legislature intended the Act to apply to both kinds of cases.

And the Court was certainly right, if the *words* of the Act are to govern on the question.

The words of the *title* are, as we have seen, "in criminal

cases." *Criminal cases* is an expression that includes criminal cases of every sort.

The first section of the *body* of the Act is as follows: "All free white male citizens who have arrived to the age of twenty-one years and not over sixty years, and resident in the county where the trial is to be had, and not being idiots or lunatics, shall be qualified and liable to serve as Jurors upon the trial of all criminal cases."

*All criminal cases* includes criminal cases of every kind.

The second section begins, "when any person stands indicted," &c.

*Any person* is a universal term.

Other parts of the Act correspond with these. See the sixth and seventh paragraphs of the 9th section.

There is no part of the Act that is not consistent with these parts, thus quoted or referred to.

If, then, we go by the *words* of the Act, we must say that the Legislature intended the Act to apply as well to cases happening before the passage of the Act, as to cases happening after its passage.

And in finding the intention of the Legislature in any Act, we must always go by the words they use; at least, if in doing so we are led to no very bad or very absurd consequences.

Making this Act apply as well to cases happening before its passage as to those happening after its passage, will lead to no bad or absurd consequences.

The Act is not *worse* for criminals than the law it takes the place of. It is perhaps better. It enlarges the class of persons qualified to serve as Jurors. It adds a question on the *voire dire*, to the two which the old law gave. For triors, to be appointed by the Court, it substitutes the Court itself, a tribunal at least equally as good. In other respects, the Act does not seem to differ materially from the old law.

The Act, therefore, is not an *ex post facto* law.

The Act not being an *ex post facto* law, there can be no reason calling for an application of it to cases occurring after

its passage, that will not equally call for an application of it to cases occurring before its passage. In short, no bad effect will result from making the Act apply as well to cases arising before its passage as to cases arising afterwards.

Therefore, in order to ascertain the meaning of the Act, we must go by the words of the Act. And the words, as we have seen, extend as well to cases in existence at the time of the passage of the Act, as to cases coming into existence afterwards.

The conclusion therefore must be, that it was the intention of the Legislature which passed the Act, that the Act should extend as well to cases in existence at the time of the passage of the Act as to cases coming into existence after that time.

But it was argued that the Act could not apply to the former class of cases, because another Act says, that that class of cases shall be governed by the laws in force at the time when the cases arise, " notwithstanding the repeal of such laws before the trial takes place." This other Act is the Code. It says this in the 34th section of its 14th division. (*Pr. Dig.* 662.)

But this declaration of the Code is in conflict with the Act aforesaid, for it was the intention of the Legislature, as we have seen, that that Act should apply to *all* criminal cases. And that Act is the later Act. And *leges posteriores priores contrarias abrogant.*

Besides, the later Acts *expressly* repeal "all laws in conflict" with it.

It was therefore the intention of the Legislature that passed the later Act, to repeal the section aforesaid in the Code. And that was an intention which that Legislature had the power to execute, notwithstanding the peculiar nature of the section. No Legislature has the power to curtail or to contract the power of a subsequent Legislature. The Legislature that passed the Code, therefore, could not do anything sufficient to prevent a subsequent Legislature from repealing the Code, or any part of it.

Bailey *vs.* The State.

It was said in argument, however, that in the case of *Reyn-*. *olds vs. The State,* (3 *Kelly,*) this Court had held that an Act of 1843, on the same subject as this Act of 1856, and equally as comprehensive in its terms, did not repeal the second section of the Code; and it was thence insisted, that the Court ought, by analogy, to hold that this Act of 1856 did not repeal that section.

But the Acts of 1843 and 1856 are dissimilar in one important respect. The Act of 1843 was harder upon criminals than was the old law that it took the place of; the Act of 1856 was not harder upon criminals than the old law that it took the place of; therefore, the Act of 1843 was an *ex post facto* law; i. e. an unconstitutional law, as to all criminal cases in existence at the time of its passage, whilst the Act of 1856 was not an *ex post facto* law, i. e. was not an unconstitutional law, as to the criminal cases in existence at the time of its passage.

Therefore, if it was the intention of the Legislature that the Act of 1843 should repeal the old law as to criminal cases in existence at the time of its passage, it must have been the intention of the Legislature that there should be either no law for the trial of those cases, or none but an *ex post facto*—but an unconstitutional law.

But as the Act of 1856 was not an *ex post facto* law, the Legislature might well have intended it to repeal the old law, and yet, not have intended that for the trial of criminal cases in existence at the time of its passage, there should be either no law or none but an *ex post facto*—but an unconstitutional law. The Act of 1856, itself, would serve for the trial of these cases.

Therefore, it does not follow, that because this Court held that the Act of 1843 did not repeal the said section of the Code, it must hold that the Act of 1856 did not repeal that section.

So, we affirm the judgment of the Court below.

What is said on this question disposes of the other.