PRESENT—HIRAM WARNER, CHIEF JUSTICE.
H. K. McCAY,
ROBERT P. TRIPPE, } JUDGES.

---

WEST END AND ATLANTA STREET RAILROAD COMPANY, plaintiff in error, *vs.* ATLANTA STREET RAILROAD COMPANY, defendant in error.

1. Where a charter, granted by the General Assembly to a private corporation, is silent as to the time of its continuance, it will expire thirty years from its date.
2. It is a well established rule of law that an exclusive grant in derogation of common rights; as well as in all cases in which exclusive rights are claimed under a legislative grant to a corporation, that such grant should be strictly construed, and that nothing is to be intended beyond the express words contained in it.
3. On the 23d of February, 1866, the General Assembly of this State passed an Act incorporating the Atlanta Street Railroad Company. By the 2d section of said Act it is declared, "That said company shall have exclusive power and authority to survey, lay out, construct and equip, use and employ, street railroads in the city of Atlanta, subject to the approval of the City Council thereof, for each route selected, first had and obtained, before the work thereon shall be commenced:

151

*Held*, That there are no words in this charter which grants to the complainant's company the unconditional, exclusive power and authority to construct and use street railroads in *all* of the streets of the city of Atlanta, but that the grant is limited and restricted to *each route* that may be selected by the company *in* the streets of the city of Atlanta, which shall be approved by the City Council thereof.

4. The complainant cannot derive any benefit from the general ordinance of the City Council, granting authority to its company to construct street railways on any street in the city, and across the bridge on Broad street, because that ordinance is void, not having been passed in pursuance of the requirements of the charter, as there had been no route for a street railway selected by the company and submitted to the City Council for its approval on any street in the city, as prescribed by the charter of the company, and until that had been done the City Council had no power or authority under the charter to give its approval in advance before any route had been selected by the company and submitted for its approval.

5. The laws which exist at the time and place of the making of a contract, enter into and form a part of it.

6. Where exclusive authority is vested by the General Assembly in a private corporation by its charter, under the general law of the State, said body retains the power to modify or restrict said exclusive grant.

7. The power to withdraw an entire franchise necessarily includes the power to modify or restrict the exercise of it.

8. An affirmative statute is a repeal by implication of a precedent affirmative statute, so far as it is contrary thereto.

Injunction.  Corporations.  Charter.  Statute of limitations.  Construction of statutes.  Laws.  Repeal.  Contracts.  Before Judge HOPKINS.  Fulton County.  At Chambers.  July 30th, 1873.

For the facts of this case, see the decision.

B. F. ABBOTT; CLARK & GOSS, for plaintiff in error.

B. H. HILL & SON, for defendant.

WARNER, Chief Justice.

This was a bill filed by the complainant against the defendant, praying for an injunction to restrain the defendant from constructing, equipping or operating any street railway in any street of the city of Atlanta.  On hearing the motion on the

bill, answer of defendant and exhibits attached thereto, the presiding Judge granted the injunction prayed for.   Whereupon, the defendant excepted.

On the 23d day of February, 1866, the General Assembly of this State passed an Act incorporating the Atlanta Street Railroad Company.   By the second section of said Act it is declared, "That said company shall have exclusive power and authority to survey, lay out, construct and equip, use and employ street railroads in the city of Atlanta, subject to the approval of the City Council thereof, for *each route selected* first had and obtained, before the work thereon shall be commenced."   This charter being silent as to the time of its continuance, it will not expire until thirty years from its date: Code, section 1677.

On the 26th day of August, 1872, the General Assembly passed an Act incorporating the West End and Atlanta Street Railroad Company.   By the 3d section of that Act it is declared, " That said company shall be entitled to all the powers and privileges of the Atlanta Street Railroad Company, and subject to the same liabilities and restrictions."   That is to say, the West End and Atlanta Street Railroad Company shall have the exclusive power and authority to survey, lay out, construct and equip, use and employ, street railroads in the city of Atlanta, subject to the approval of the City Council thereof, for *each route selected,* first had and obtained, before the work thereon shall be commenced.   It will be noticed that neither company has the exclusive power and authority, under the respective charters, to construct and use any street railroads in the city of Atlanta, until the route has first been selected by it and approved by the City Council thereof.

The complainant alleges that it has already in operation eight miles of street railroad at a cost of $140,000 00, but does not allege on what streets or routes the same have been selected or located, nor is it alleged that any particular street or route has been selected by it for a street railroad in the city and been approved by the City Council, as required by its charter.   It is true, the complainant alleges that before

commencing work on said streets, it made an application to the City Council of said city for their approval, according to the terms of the charter, and said city did approve the same in the following words, which is a copy of the ordinance of the City Council: "Authority is hereby granted to the Atlanta Street Railroad Company to construct street railways on any street in the city, and across the bridge on Broad street." On the 27th June, 1873, the defendant petitioned the City Council to allow it to construct and use a street railroad in the city of Atlanta, under its charter, from the passenger depot to the Ponce de Leon Springs, which was granted by the City Council, specifying the route and the streets on which it was to be constructed, which route and streets are not occupied and used by the complainant's street railroad, and it is the construction and use of a street railroad on this selected route by the defendant, that complainant seeks to enjoin. The complainant insists that under its charter the General Assembly have granted to it the unconditional *exclusive* franchise to construct and use street railroads in *all* of the streets of the city of Atlanta, for the term of thirty years, that being the time of the duration of its charter under the law; that, upon the acceptance of the charter by the company, it became an executed contract which the Legislature could not impair by granting another charter to the defendant, and if the Legislature could do so for the benefit of the public, then it could only do it by making just compensation. These general legal propositions contended for are recognized and admitted, provided the complainant has the unconditional, *exclusive* right of franchise granted to it by its charter, to construct and use street railroads in *all* of the streets of the city of Atlanta.

It is a well established rule of law, that exclusive grants in derogation of common right, as well as in all cases in which *exclusive* rights are claimed under a legislative grant to a corporation, that such grant should be *strictly* construed, that nothing is to be intended beyond the express words contained in it. Applying this rule of construction to the complainant's grant as expressed in its charter, does it give to it the uncon-

ditional, exclusive right to construct and use street railroads in *all* of the streets of the city of Atlanta for thirty years?   Or, is the grant in the charter restricted and limited to the exclusive right to construct and use such street railroads only for each route selected by the company *in* the streets of the city of Atlanta as may be approved by the City Council thereof? If the complainant's company have the exclusive franchise as claimed under its charter, then it is entitled to the protection of the law, however great a monopoly it may be.   The words of the charter are: "That said company shall have the exclusive power and authority to survey, lay out, construct and equip, use and employ, street railroads *in* the city of Atlanta, subject to the approval of the City Council thereof, for *each route selected*, first had and obtained, before the work thereon shall be commenced."

In our judgment, there are no words in this charter which grants to the complainant's company the unconditional, exclusive power and authority to construct and use street railroads in *all* of the streets of the city of Atlanta, but that the grant is limited and restricted to *each route* that may be selected by the company *in* the streets of the city of Atlanta, which shall be approved by the City Council thereof.   When each route for the street railroad has been selected by the company in one or more streets *in* the city, and approved by the City Council thereof, then the company have, under the grant in the charter, the exclusive power and authority to construct and use street railroads on each route so selected and approved, and that is the extent of the grant.   The exclusive grant to construct and use street railroads on *each route* that may be selected *in* the streets of the city, and approved by the City Council, is one thing ; the exclusive grant to construct and use street railroads in *all* the streets of the city for thirty years, is another and quite a different thing, as will be readily perceived.   The complainant cannot derive any benefit from the general ordinance of the City Council granting authority to its company to construct street railways on any street in the city, and across the bridge on Broad street, because that ordinance is void, not

having been passed in pursuance of the requirements of the charter. There had been no route for a street railway selected by the company and submitted to the City Council for its approval, on any street in the city, as prescribed by the charter of the company, and until that had been done, the City Council had no power or authority, under the charter, to give its approval in advance, before any route had been selected by the company and submitted for its approval. The City Council, under the charter, were to approve of *each route* selected by the company for the construction and use of street railroads in the city, when the same should be submitted by the company for their approval, and not until that had been done. The argument for the complainant is, that it has the exclusive right granted to it by the charter to construct and use street railroads in *all* of the streets in the city for thirty years, whenever it shall select a route therefor, and obtain the approval of the City Council. This construction of the grant would place it entirely in the power of the company to construct only such street railroads in the city as it might think proper, and to disregard the wants and convenience of the citizens in every other part of the city for thirty years. Can it be possible, or even probable, that the General Assembly intended *that* in making the grant? Is it not more reasonable to say, in construing the grant, that it was the intention of the Legislature that the company should have the exclusive right to construct and use such street railroads only in the city, each route of which it had selected, and obtained the approval of the City Council?

The grant is not the exclusive power and authority to construct and use street railroads in *all* the streets of the city for thirty years, but the grant is to construct and use street railroads in the city, subject to the approval of the City Council thereof for *each route selected*, first had and obtained, before the work thereon shall be commenced ; and to *each route* so selected and approved, the company shall have the exclusive right to construct and use street railroads *thereon* for thirty years.

West End, etc., Company *vs.* Atlanta, etc., Company.

The intention of the Legislature as to the exclusive right claimed to have been granted to construct and use street railroads in *all* the streets of the city, is not doubtful, when viewed in the light of the Act of 1872, for we cannot impute to that body an intention to impair a grant which they had previously made, which we must do in order to sustain the construction contended for. If the Legislature had thought that the complainant's company had the exclusive right to use and occupy *all* the streets in the city under its grant, as claimed, they would not have made the grant they did to the defendant's company. To construe the grant to the complainant's company as vesting in it the exclusive right to construct and use street railroads in *all* the streets of the city, will be to contravene the expressed intention of the Legislature and give to that company an exclusive monopoly over *all* the streets in the city for thirty years as to the construction and use of street railroads therein, to be exercised at the pleasure or caprice of the company; it may select what routes it pleases for the approval of the City Council, or not use and occupy any more than it has already done, in defiance of the public welfare and interest of the city, if it shall be its pleasure or interest to do so. To limit the construction of the grant in each charter to such routes in the city as each company may select and the City Council approve, will best protect the interest of the public, maintain the legal rule as to the construction of grants, and give effect to both Acts of the General Assembly. The selection of routes in the city by either company, in the streets thereof which are not occupied, with the approval of the City Council, will accomplish just what the Legislature intended should be done in the construction and use of street railroads in the city of Altanta. Construing both these Acts together, and the grants contained in each of them, it is clearly apparent that it was not the intention of the Legislature to grant to either company the exclusive right to construct and use street railroads in *all* the streets of the city for thirty years, but the grant to each is the exclusive right to construct and use only such routes in the streets of the city as each may se-

lect with the approval of the City Council. The Legislature did not intend to create an exclusive monopoly of all the streets by either company for thirty years, and the Courts should not do it unless the words of the grant are so clear and definite as not to admit of any other construction. If, however, the General Assembly of 1872 were mistaken as to the extent of the exclusive powers which had been granted to the complainant's company in the Act of 1866, and that the exclusive power now claimed had in fact been granted by that Act, was it competent for the Legislature of 1872 to modify or restrict that exclusive grant of power under the general law of this State as it existed at the time of the grant and the acceptance thereof by the company, and has it done so by necessary implication according to the cardinal rule for the construction of statutes as recognized by this Court? The Code took effect on the 1st day of January, 1863, and the 1681st section thereof declares, that "In all cases of private charters hereafter granted, the State reserves the right to withdraw the franchise, unless such right is expressly negatived in the charter." This section of the Code introduced a new element into the law of private corporations in this State, and all charters granted by the State to private corporations since its adoption, are subject to its provisions.

When the company accepted the grant made by the General Assembly, it did so with a full knowledge of this general law, as much so as if it had been inserted in the Act incorporating the company, and it is a well established rule that the laws which exist at the time and place of the making of a contract, enter into and form a part of it. The complainant's company, therefore, accepted the charter, subject to the right of the State to withdraw, modify or restrict the franchise granted to it whenever the State should think proper to do so. The power to withdraw the entire franchise granted, necessarily includes the power to modify it, or to restrict the exercise of it, and the question is, whether the General Assembly, by the passage of the Act of 1872, has modified or restricted the complainant's franchise, as claimed under the Act of 1866,

even if it was *exclusive*, to construct and use street railroads in *all* the streets of the city of Atlanta for thirty years?   The grant to the defendant's company to construct and use street railroads in the streets of the city is directly repugnant to, and inconsistent with, the grant to the complainant's company to have the exclusive right to construct and use street railroads in *all* of the streets of the city, and if the complainant's company did have the exclusive franchise, as claimed under the Act of 1866, that exclusive franchise is modified or restricted *pro tanto*, by necessary implication, by the Act of 1872. Both Acts cannot stand and be operative, with the exclusive right of franchise claimed for the complainant's company, any more than two solid bodies could occupy the same space at the same time.

In the case of *The Union Branch Railroad Company vs. The East Tennessee and Georgia Railroad Company*, 14 *Georgia Reports*, 328, this Court held and decided that an Act of incorporation, in which the Legislature have reserved the right of repeal, may be repealed by implication, upon the principle that every affirmative statute is a repeal, by implication, of a precedent affirmative statute, so far as it is contrary thereto. Our conclusion, therefore, is, that if the complainant's company had had the exclusive right granted to it by the Act of 1866, as claimed, that it was competent for the General Assembly, under the general law of the State, to modify and restrict that grant as it did by the passage of the Act of 1872, which repealed all laws in conflict with the provisions of that Act. This did not impair the complainant's contract, under its charter with the State, because it made the contract in view of the general law of the State, which entered into and formed a part of it.   The complainant's company and the defendant's company, under the two respective Acts of the General Assembly, each for itself, has the exclusive power and authority to survey, lay out, construct and equip, use and employ, street railroads in the city of Atlanta, subject to the approval of the City Council thereof for each route selected, first had and obtained, before the work thereon shall be commenced, for and

during the limitation of their respective charters, subject to the right reserved by the State to withdraw, modify or restrict the respective franchises granted to each company, as provided by the general law of the State at the time of the acceptance thereof by each company.

Let the judgment of the Court below granting the injunction be reversed.