THE MEMPHIS BRANCH RAILROAD COMPANY, plaintiff in error, *vs.* JAMES B. SULLIVAN, defendant in error.

THE MEMPHIS BRANCH RAILROAD COMPANY, plaintiff in error, *vs.* ALBIN OMBERG, defendant in error.

1. A subscriber to shares in a corporation contracts with reference to the charter; and the number of shares to be subscribed, or the whole capital stock necessary to do the contemplated business, constitutes an important element in the contract. A man might agree to make one of ten to raise $1,000 00, and still might refuse to be one of ten to raise $500 00. The latter sum might, in his judgment, be wholly inadequate to accomplish the purpose of his subscription, and to subscribe in such a case would be to throw away his money.

2. If the sum fixed by the charter had been subscribed, and yet subscriptions had been released so as to reduce the capital largely and materially, without the consent of the subscriber, the effect would be the same as if the stock released had never been subscribed. A mere nominal subscription, to fulfil the letter and break the spirit of the contract, is no substantial compliance with the charter, and when released because it was nominal, it becomes equivalent to no subscription *ab initio.*

3. Whether an amendment to a charter be material or not is a question of law for the court, and should not be left to the jury; but when its evident purpose is to legalize previous illegal proceedings, and its effect is to reduce the capital stock at the option of the corporation, and the verdict is in favor of the party asserting its materiality, this court will not interfere.

4. If a subscriber acquiesce in the progress of the work by payment of his subscription, assessed or otherwise, he cannot afterwards object, either to the failure originally to get subscribers to the whole stock, or to a material amendment of the charter; but the fact that he merely pays his assess-

The Memphis Branch Railroad Company *vs.* Sullivan.

ments to have the route surveyed, is not sufficient to show such acquiescence; and where the question of acquiescence has been fairly submitted to the jury and has been passed upon by them, with evidence enough to sustain the verdict, this court will not interfere. This latter fact distinguishes this case from the case of *May vs. The Memphis Branch Railroad Company, 48 Georgia Reports, 109.*

Corporations. Contracts. Stock. Before Judge McCutchen. Floyd Superior Court. January Adjourned Term, 1876.

Reported in the opinion.

N. J. Hammond, attorney general; Dabney & Fouche; Smith & Branham; C. A. Thornwell, for plaintiff in error.

Wright & Featherston, for defendants.

Jackson, Judge.

This was a suit brought on several assessments of stock subscribed by Sullivan for the purpose of building a railroad from Rome to the Alabama line, and to connect with certain roads in that state. It appears from the record that the charter required a subscription of $500,000 00 before it was operative; that this sum was not subscribed originally and was afterwards reduced still more, one subscription, a mere nominal one, for $250,000 00 having been released by the company, and even with that counted, it is clear that the whole subscription never reached $500,000 00. The charter was amended, legalizing certain acts of the company and authorizing it, in effect, to go on with the work with $100,000 00 of stock subscribed. Sullivan paid up three assessments, but for a survey of the route and other preliminary objects only. Suit was brought against Sullivan for the balance of his susbcription which was assessed and which he had refused to pay. The jury, under the charge of the court, found for defendant; the railroad company moved for a new trial, it was refused, and error is assigned upon this refusal.

The questions made are: 1st. Whether a subscriber to stock

of a corporation, chartered for an enterprise, is bound to pay his assessments unless the whole stock be subscribed.    2d. Whether, even if the whole had been subscribed originally, a large part merely nominally and which was afterwards released, the subscriber would be bound to pay assessments. 3d. Whether an amendment to the charter authorizing the company to proceed with a less sum than the whole amount required to be subscribed, is so material as to release the subscriber from his subscription, if done without his assent.    And, 4th. Whether the facts proven authorized, or rather required, the jury to find that the subscriber had acquiesced in the failure of the procurement of the original sum fixed in the charter to be subsubscribed, or in its reduction by the release of certain nominal subscribers, or in the alteration of the charter, though material.

1. In respect to the first point, it appears to us that when one agrees to pay so much for an enterprise, how much it will take to complete it, is a most important question.  There can be no doubt that he subscribes on condition that the charter is complied with; that instrument forms part, and an important part, of his contract; the law of the corporation made the terms upon which he agrees to pay; and the amount of valid subscriptions made for the common enterprise is most material.    One might be willing to be one of ten men to raise $1,000 00, but not one of ten to raise $500 00 for a given purpose; $1,000 00 might, in his judgment, be the least sum that could accomplish the object; $500 00 he might believe could not, and that his subscription in the latter case would be money thrown away.    In this very case he might be quite willing to be one of five thousand share-holders at $100 00 each, believing that the road, a good substantial road, could not be built for a dime less than $500,000 00; but he might think it folly to venture on such an enterprise with $100,000, and would not subscribe a cent for it, because it would waste his money for nothing.    And so we find the authorities to be: 6 Pick., 23; 10 *Ibid.*, 142; 45 Maine, 524; 1 Redfield on Railways, 176, *et seq.*, and cases cited there.

2. It surely cannot alter the case if a large and material subscription were merely nominal, and was afterwards released because it had always been a sham, and all this had been done without the knowledge and consent of the subscriber, who was thus duped and cheated into his subscription by the sham.

3. In respect to the amendment of the charter, it appears from the record that the court left its materiality to the jury, and this is assigned for error. That amendment was to the effect that the capital stock may be as much as $500,000 00, but that the company may commence work when $100,000 00 was subscribed. We think that the materiality of this alteration was a question for the court, and that the judge should not have turned it over to the jury; but as they found it material, of course, if we agree with them, we ought not to interfere with what they did. We do think that the change is material in so far as it would force collections from those who had subscribed only on condition that $500,000 00 should be subscribed. Besides, it legalized acts done by the directors and stockholders in releasing fictitious subscribers, and otherwise. Taking it altogether, it is such an alteration as materially affects the contract Sullivan made, and the principle ruled in *Winter vs. The Muscogee Railroad Company,* 11 *Georgia Reports,* 438, will apply to this case.

4. Indeed, in the case of May *vs.* this railroad company, 48 *Georgia Reports,* 109, this court held the views above given, and held May bound in that case, because he acquiesced, and only because he acquiesced in what had been done in going on with the work without $500,000 00 subscribed, in the release of the fictitious stock, and the amendment of the charter. But in the case at bar the question of acquiescence was fairly submitted to the jury; they have found that Sullivan did not acquiesce, and the evidence supports the finding. In May's case May shows no dissent at all, swears to none himself; while, here, Sullivan swears that all those acts complained of were without his knowledge or consent. Indeed, the only evidence at all of acquiescence here is, the fact

that Sullivan paid three assessments, but *these were all for mere surveys of the work,* and the payment of the assessments for that purpose merely, does not show acquiescence in beginning before the whole amount of stock is subscribed. A survey and payment for it, may be always made to ascertain the practicability of the work before the entire stock is subscribed. See the authorities above cited, especially 6 Pick., 23.

In view of the whole case as disclosed by the record, we think the verdict right, and we affirm the judgment of the court below in sustaining it.

Omberg's case differs from that of Sullivan only in the fact that the former never did pay any assessment either for the main work or the survey; and there is not even that evidence going to show that he acquiesced in the conduct of the company or in the change of the charter.

Judgment affirmed.