THE MACON & AUGUSTA RAILROAD COMPANY *vs.* GOLDSMITH, comptroller-general.

GOLDSMITH, comptroller-general, *vs.* THE MACON & AUGUSTA RAILROAD COMPANY.

[These cases were argued at the last term, and the decision reserved.]

1. Where the charter of a railroad company provided that its stock should be exempt from all taxation except such as was then imposed upon bank stock, and afterwards an amendment to the charter was passed, and accepted by the company, providing that its stock should at all times be subject to such tax as the legislature should desire to levy, the latter provision repealed the former.

2. An act changing the name of a railroad company, and continuing to it under the new name all its rights, privileges, etc. under its former name, did not revive provisions of the charter granting exemption from taxation which had been repealed by prior amendments. If otherwise, the reviving act being passed after the adoption of the Code, would not interpose a constitutional barrier so as to prevent the legislature from taxing the company like natural persons.

3. To be entitled to the remedy provided for by the act of 1874, a railroad must make returns as provided by that act before the issuing of executions against it as a defaulter.

Railroads. Corporations. Charters. Laws. Taxes. Before Judge GRICE. Fulton Superior Court. April Term, 1878.

In addition to the report contained in the decision, it is only necessary to add that the *fi. fas.* were issued and levied under the act of 1874 (p. 107), and that the grounds of illegality set up by defendant were as follows:

1. Because, by the terms of section 6 of the act of the legislature of Georgia, assented to 26th December, 1837, which said act was the original charter act of said company, the company was to be exempt from all taxation whatever except such as was provided for in the following clause in said 6th section, to-wit: That the stock of the aforesaid company shall be exempt from all taxes, duties and impositions whatever, unless it be such a tax, and no more, as is now imposed on bank stock in this state.

2. Because, at that time, and thence on to February 18, 1854, when the charter was amended, the only tax that could have been imposed on said company under the charter contract with it was a tax of thirty-one and one-fourth cents on every hundred dollars worth of its stock, that being the tax on bank stock at the date of the grant of said charter on the 26th of December, 1837.

3. Because by the amendment of the charter approved February 18, 1854, it was provided, "That the stock in said railroad company shall at all times be subject to such tax as the present or any future legislature may desire to levy on the same." And, though this amendment was accepted by the company, and thus it consented to the right of the state to levy such tax upon the stock of the company as that legislature, then in session, or any subsequent legistature, might desire to levy on the same, still there was no act, either at that session or any subsequent session of the legislature, levying a tax in pursuance of the provision directly upon the stock of said company, and in 1866, the legislature re-enacted the original charter, so far as to fully restore the original immunity from taxation. And further, the assessment in this case is not in conformity to the constitution of 1868 and the act of 1874, but is on the capital stock, two millions at par, instead of upon the value of the property of the company.

4. Because, by the terms of the charter, the state is limited to taxation upon the stock of the company according to its value, and the tax imposed upon railroads in this state, under any act whatever, on net earnings, or other property, can have no legal reference to, or bearing upon, the Macon and Augusta Railroad Company.

5 Because the persistent course of the state toward this company in abstaining from, or failing to impose, any other tax for more than thirty years than that authorized by the charter, is itself a recognition and confirmation of the view taken by the company, that nothing but its stock was to be taxed, and then only such tax as should be directly levied, or authorized to be levied on the same, by special act of the legislature.

6. Because said *fi. fas.* are issued, and are proceeding under and by virtue of the act of the legislature of Georgia dated February 28, 1874, and said act, so far as it is claimed to apply to the Macon & Augusta Railroad Company, is unconstitutional and void, in this, that it violates, or seeks to violate, the contract of the state made with said company in its charter, and is therefore in conflict with clause 1, section 10, article 1, of the constitution of the United States, and assesses a tax greater than that authorized by the charter contract.

7. Because at the date of the grant of the charter of this company, there was no right reserved, either by special provision in it, or by a general act of the legislature applicable to all corporations, to withdraw the franchise, and hence its charter rights cannot be affected by

the provision in section 1682 of the Code of Georgia, since to allow this result would be to impair by subsequent legislation a contract by which the state had previously bound itself.

Hook & Webb, for the railroad.

R. N. Ely, attorney-general; R. Toombs; D. M. DuBose, for the state.

Warner, Chief Justice.

This case came before the court below on an affidavit of illegality to four tax *fi. fas.*, issued by the comptroller-general of the state against the defendant for its taxes alleged to be due for the years 1874, 1875, 1876 and 1877. The said *fi. fas.* were dated 20th November 1877, each for the sum of $10,000 for tax due, and for the further sum of $30,000 for penalty—the said tax being assessed by the comptroller-general for each year, from the best information he could procure as to the value of the defendant's taxable property—the said *fi. fas.* were levied on the defendant's depot buildings, and ten acres of land, and about five miles of its track in the county of Bibb, the levy having been made by the deputy-sheriff of that county. There are several grounds of illegality to the *fi. fas.* insisted on in the defendant's affidavit, but the main and principal grounds are, that by its charter of 1837, it was only to be taxed thirty-one and one-fourth cents on every hundred dollars' worth of its stock, and therefore the act of 1874 taxing its stock or property, as other property of the people of the state is taxed, impairs the obligation of its contract with the state, and is unconstitutional and void, and that the assessment made, was not in conformity to the state constitution of 1868 and the act of 1874, but is on the capital stock of two millions at par, instead of upon the value of the property of defendant's company.

It was agreed that the Macon & Augusta Railroad was not commenced to be built until after the passage of the act of 18th of February, 1854. On the 2d of March, 1878, the de-

fendant made returns of the capital stock of its company for the years 1874, 1875, 1876 and 1877 to the comptroller-general without deducting its indebtedness, which were submitted to the court by the defendant, it being agreed that the court should decide the questions without the intervention of a jury. The counsel for the state demurred to the defendant's affidavit of illegality in connection with the evidence in the record. The court sustained the demurrer so far as the unpaid tax specified in the *fi. fas.* was concerned: whereupon the defendant excepted. The court sustained the affidavit of illegality as to the penalty specified in the *fi. fas.*, whereupon the counsel for the state excepted.

1, 2. By the act to incorporate the Milledgeville Railroad Company, passed the 26th of December, 1837, it was declared " that the stock of the aforesaid company shall be exempt from all taxes, duties and impositions whatever, unless it be such a tax, and no more, as is now imposed on bank stock in this state." By the act of the 18th of February, 1854, entitled an act to amend the charter of the Milledgeville Railroad Company, and to confer certain powers on the same same, it is is provided " that the stock in said railroad company shall at all times be subject to such tax as the present, or any future legislature, may desire to levy on the same." The charter as amended was accepted by the company. This part of the act of 1854 upon the subject of taxing the stock of the company, is so clearly repugnant to that part of the act of 1837 relating to the same subject matter, that it necessarily repeals that clause of the former act taxing the stock of the company as bank stock was taxed in this state. On the 23d of February, 1866, the general assembly passed an act to change the name of the Milledgeville Railroad Company, and for other purposes, by which it was enacted " that the name of the Milledgeville Railroad Company be, and the same is hereby, changed to the name of the Macon and Augusta Railroad Company, with the approval of its president and board of directors, and that all the rights, honors, immunities and franchises of the former

shall be continued to the latter," and repealed all conflicting laws. The legal effect of this last act was to give to the company all the rights, honors, immunities and franchises which it had under the amended act of 1854 in regard to the taxation of its stock, and no more. But assuming that the legal effect of the act of 1866, was to revive the act of 1837, as to the taxing of the company's stock, then, that act having been passed after the adoption of the Code, it was competent for the general assembly by the act of 1874, to tax its property as other property of the people of the state was taxed, without impairing the obligation of its contract with the state. *West End and Atlanta Street Railroad Company vs. Atlanta Street Railroad Company*, 49 *Ga.*, 151.

3. There is no evidence in the record going to show whether the comptroller-general assessed the tax for which the executions issued, upon the capital stock of the company, or upon the value of its property, and, therefore, it is impossible for us to say upon what information the comptroller-general assessed the tax. The defendant, it will be noticed, made no return of its property for taxation for the years 1874, 1875, 1876 and 1877, as required by law, until after the executions were issued against it in November, 1877, but was in *default*, and, therefore, the comptroller-general assessed the tax from the best information he could procure, and issued the executions for the amount assessed for each year, together with the penalty, as provided by the 876, 878 and 881 sections of the Code, and the second section of the act of 1877.

The result therefore is, on the facts of the case as disclosed in the record, that if the proper remedy of the defendant had been by an affidavit of illegality the same should have been overruled. Inasmuch, however, as the defendant made no return of its property as required by the act of 1874, prior to the issuing of the executions against it, it was not entitled to the statutory remedy as provided by that act, and therefore the judgment of the court below

is reversed with directions that the defendant's affidavit of illegality be dismissed for want of jurisdiction.   In my individual judgment, this case is distinguishable from that of the *State vs. The Southwestern Railroad Company;* in that case the defendant had made a return of its taxable property as required by the act of 1874, and so had the Central Railroad and Banking Company.   Let the judgment of the cou t below be reversed with directions as hereinbefore indicated.

Judgment reversed with directions.