BARNETT *v.* D. O. MARTIN COMPANY *et al.*

No. 13501.   OCTOBER 15, 1940.

12

*Powell, Goldstein, Frazer & Murphy,* for plaintiff.

*Alston, Foster, Moise & Sibley* and *James L. Alston,* for defendants.

GRICE, Justice. ■ The first question presented is whether or not the provisions of sections 18 to 23 of the act approved January 28, 1938 (Ga. L. Ex. Sess. 1937-8, pp. 214-247), authorizing corporations to merge or consolidate, apply to corporations chartered before the date of the approval of the act. The general rule is that laws prescribe only for the future, and usually will not be given a retrospective operation. Code, § 102-104; *Walker County Fertilizer Co. v. Napier,* 184 *Ga.* 861 (193 S. E. 770), and cit. They will be given a retroactive effect, however, when the language imperatively requires it, or when an examination of the act as a whole leads clearly to the conclusion that such was the legislative purpose. It is at last and always a question of legislative intent. The act of 1856 changed the law as to who were qualified to serve as jurors in criminal cases. It was contended that the new act did not apply to pending cases, although its language described those who "shall be qualified and liable to serve as jurors upon the trial of all criminal cases." Another section began, "When any person stands indicted," etc. The court held that the new pro-

visions applied as well to cases happening before its passage as to those thereafter. *Bailey* v. *State,* 20 *Ga.* 742. The act of November 12, 1889 (Ga. L. 1889, p. 73), so amended section 2967 of the then Code of Georgia as to prevent the abatement of actions ex delicto in certain cases. The language of the act was: "Nor shall any action for the recovery of damages," etc., "abate by the death of either party." It was ruled that an action pending on the date of the passage of the act was not abated by the death of the plaintiff, because the words, "'any action,'" said this court, "may as well mean any action now in existence as any action hereafter commenced, and it is not straining to give them this interpretation." *Pritchard* v. *Savannah Street & Rural R. Co.,* 87 *Ga.* 294 (13 S. E. 493, 14 L. R. A. 721). In *Mills* v. *Geer,* 111 *Ga.* 275 (36 S. E. 673, 52 L. R. A. 934), the court had before it the act of December 21, 1897 (Acts 1897, pp. 79-81), providing that in a suit to recover land the defendant, under certain circumstances, might set off the value of permanent improvements placed thereon by himself. The first section of the act referred in express words to "all cases where an action has been brought for the recovery of land." It was there said: "Its terms, therefore, were applicable, not only to suits for the recovery of land thereafter brought, but also to such suits as were pending in court at the time of the passage of the act; and necessarily referred to past as well as future improvements." There is one provision (sec. 7) of the rather comprehensive statute here involved (the act of 1938, supra) which is made expressly applicable to "any corporation, whether incorporated under prior existing laws or under this law." Section 44 begins, "Any corporation in existence at the time of the passage of this act." Still another (sec. 40) commences with the words, "If any corporation created under any law of this or any other State." There are other provisions which expressly name "any corporation incorporated or reincorporated under this act." Sections 39, 33, 24, 10(j). Various other sections, dealing with power conferred, and limitations, refer merely to "the corporation," "every corporation," "any corporation," "corporations." Section 44a is in this language: "None of the terms of this act shall apply to corporations excepted from the provisions of this act under the terms of section 1 hereof, nor to electric membership corporations, as defined in an act approved March 30, 1937, Georgia Laws 1937, pages 644 et seq."

Turning to section 1 of the act, we find only banking, insurance, railroad, trust, canal, navigation, express, and telegraph companies excepted thereunder. The character of the corporations involved in the instant case was not such as was included in the foregoing exceptions. The language of section 44a is broad enough to include both corporations as being embraced within the terms of the act, including the right to merge without the unanimous consent of the stockholders; and when exceptions are mentioned, they do not come within any of those stated. The words of the section under which these two corporations claim the right to merge are as follows: "Section 18. Any two or more corporations, incorporated either under the laws of this State or under the laws of any other State or country, except banks and trust companies, may merge or consolidate into a single corporation," etc. Here again is the language broad enough to include both corporations, with an express exception to the power granted, the exception not covering them. "It is well established that an exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted, and excludes all other exceptions." 25 R. C. L. 983, § 230. See *Washington* v. *A. C. L. R. Co.*, 136 *Ga.* 638, 644 (71 S. E. 1066, 38 L. R. A. (N. S.) 867). One other section of the act remains to be noticed. It is section 22, which reads as follows: "The right and power in this Act provided to merge or consolidate is cumulative, and in addition to any power or right to merge or consolidate vested in corporations heretofore created or provided by or under terms of other statutes or provisions of the Code of the State of Georgia." Here it seems to us is a clear recognition of the legislative purpose to make the provision concerning merger applicable to corporations created before the passage of the act. Keeping in view the rule laid down in the authorities above cited, and the language employed by the lawmakers, we can not escape the conclusion that the legislative intent was to make applicable to corporations created before, as well as after, the passage of the act, the provision as to merger.

■ Is there anything in section 18 et seq. of the act approved January 28, 1938, above referred to, giving to certain corporations created before its passage the right to merge or consolidate, which violates the provisions of the constitution of the United States, or of the State of Georgia, which prohibits the State from enacting

any law which impairs the obligation of a contract? In construing the statute to mean what in the first division of this opinion we have held it to mean, counsel for the plaintiff take the position that, so applied, the act violates the constitutional provisions above referred to, in that at the time these two corporations were chartered there was no law which permitted a merger, unless by unanimous consent of the stockholders, if at all, and that when the plaintiff, owner of one tenth interest in a corporation of his own selection, is by compulsion of law commanded, at the behest of his fellow stockholders, to give up that investment in that corporation and to become a stockholder of another corporation in which his percentage of control will be much smaller, this amounts to an impairment of his original contract. The decision in Dartmouth College v. Woodward, 4 Wheat. 518 (4 L. ed. 629), is relied on. The pronouncement there made that a charter is a contract within the obligation clause of the Federal constitution came as a distinct surprise, if not indeed a shock, to many eminent American jurists, who were unable to see in a charter the elements of a contract, lacking as it did the assent of two competent parties, without a valuable consideration, and containing no mutuality of obligation—no obligation, for instance, on the corporation to carry out a single object of its incorporation, as pointed out by the author of a note in 4 L. ed.; besides the further reason that a charter is a mere law, and not intended as a contract at all, but rather a mere permission or license. See also 2 Warren's History of the Supreme Court in United States, 248, 298, 370; 3 Id. 309, 340-341. Not only have there been many limitations and modifications of the doctrine of the Dartmouth College case, the first of which was declared by the Supreme Court itself shortly after Chief Justice Marshall left the bench, but, taking advantage of a suggestion contained in the concurring opinion of Mr. Justice Story, some of the States almost immediately after the decision was rendered, adopted the practice of reserving in all corporate charters the right to alter, amend, and repeal them. The practice has since become general, if not universal, both among the States and with Congress. See the note in 4 L. ed., supra; Dart v. Houston, 22 Ga. 506, 536. A provision of that kind was inserted in the Georgia Code of 1863, § 1582, in these words: "Persons are either natural or artificial. The latter are the creatures of the law, and, except so far as the law forbids

16

it, subject to be changed, modified, or destroyed, at the will of their creator; they are called corporations." This language is found in the Code of 1933, § 79-101. Sections 22-1202 and 22-1203 of the present Code, which have their genesis in the Code of 1863, as sections 1636 and 1637, relate to the same subject. This reservation of power to change, modify, or destroy is usually referred to as the reserved power of the State.

The inquiry presents itself as to whether these reserved powers to change, modify, or repeal are broad enough to justify the legislative authorization of a merger of one corporation with another, without the unanimous consent of the stockholders. The courts of a number of other States have upheld the right of the legislature to make provisions for merger applicable to pre-existing corporations, while a few have taken the contrary view. Among the cases upholding the right are Bishop v. Brainerd, 28 Conn. 289; Mead v. N. Y. H. & N. R. Co., 45 Conn. 199; Norton v. Union Traction Co., 183 Ind. 666 (110 N. E. 113, Ann. Cas. 1918A, 156); Market Street Ry. Co. v. Hellman, 109 Cal. 571 (42 Pac. 225); Hale v. Cheshire R. Co., 161 Mass. 443 (37 N. E. 307); Jones v. Missouri-Edison Electric Co., 135 Fed. 153; Winfree v. Riverside Cotton Mills Co., 113 Va. 717 (75 S. E. 309); Kirby v. Saginaw Hotels Co., 253 Mich. 308 (235 N. W. 153); Bingham v. Savings Investment &c. Co., 101 N. J. Eq. 413 (138 Atl. 659). Apparently to the contrary are Botts v. Simpsonville &c. Turnpike Co., 88 Ky. 54 (10 S. W. 134, 2 L. R. A. 594), and Zabriskie v. Hackensack &c. R. Co., 18 N. J. Eq. 178 (90 Am. D. 617). As sustaining the weight of authority to the effect that such consolidation may be effected under what is usually termed the reserved powers, see Fletcher's Cyclopedia of Corporations, §§ 7049, 7050, 7063; 14A C. J. 1060, § 3640. Although there has been no decision by this court on the precise point, it has long been the practice of the General Assembly of this State to authorize corporations to merge on a vote of less than all of the stockholders. See Acts 1862-3, p. 223; Acts 1872, p. 351; Acts 1876, p. 257; Acts 1886, p. 142; 2 Acts 1886-7, p. 151; 2 Acts 1888-9, p. 369; 1 Acts 1890-91, p. 394; Acts 1909, p. 163. Other acts, though not dealing with merger, gave to less than all of the stockholders the power to make a material change, upon the vote of less than all of the stockholders. Acts 1910, p. 106; Acts 1912, p. 107; Acts 1919, p. 135; Acts

1925, p. 224. This is the legislative construction of the General Assembly's reserved power over corporations that sustains the position of defendant in the instant case. There are a number of decisions of this court wherein it was said that a charter of a corporation may not be amended in a material particular, except with the consent of all the stockholders. In many of these such a ruling was squarely made. *Woodruff* v. *Columbus Investment Co.,* 135 *Ga.* 215 (68 S. E. 1103) ; *Atlanta Steel Co.* v. *Mynahan,* 138 *Ga.* 668 (75 S. E. 980) ; *Macon Gas Co.* v. *Richter,* 143 *Ga.* 397 (85 S. E. 112) ; *National Bank of Union Point* v. *Amoss,* 144 *Ga.* 425 (87 S. E. 406, Ann. Cas. 1918A, 74), *McKemie* v. *Eady-Baker Grocery Co.,* 146 *Ga.* 753 (92 S. E. 282) ; *Johnson* v. *Tribune-Herald Co.,* 155 *Ga.* 204 (116 S. E. 810) ; *McKenzie* v. *Guaranteed Bond & Mortgage Co.,* 168 *Ga.* 145 (147 S. E. 102) ; *Cathcart* v. *Cathcart Van & Storage Co.,* 175 *Ga.* 196 (165 S. E. 58). These dealt, however, with charters granted by the superior court, and are not in point for the reason hereinafter mentioned. Certain powers to grant corporate charters have in this State been granted to the superior courts. These have been committed to the superior court "under the law as prescribed by the legislature." *Gas-Light Company of Augusta* v. *West,* 8 *Ga.* 318. See *Free Gift Society &c.* v. *Edwards,* 163 *Ga.* 857, 864 (137 S. E. 382). The powers of the superior court in this respect are only such powers as have been expressly delegated to it. *White* v. *Davis,* 134 *Ga.* 274 (67 S. E. 716). The sovereign power to alter, modify, or repeal charters is vested in the State itself, and has never been committed to the superior court. It is the General Assembly that has this reserved power, and the basis of the decisions in the line of cases last cited is that the superior court is not the residuum of this reserved power to alter the charter. *Alexander* v. *A. & W. P. R. Co.,* 108 *Ga.* 151 (33 S. E. 866), falls in the same class. In that case the application was made to the Secretary of State. That officer had no more of the reserved power than had the superior court.

*Winter* v. *Muscogee R. Co.,* 11 *Ga.* 438, was based on the following state of facts: The Muscogee Railroad Company was incorporated by an act of the General Assembly in 1845. In 1848 Winter subscribed for stock therein. In 1850 the legislature amended its charter and authorized a change in its route. Winter

2

refused to pay his subscription, and when sued he pleaded that he was released from his obligation, because by charter amendment the route had been changed. The court held with him. On the dates mentioned the State had not asserted its reserved power over corporations. In *Wilson* v. *Wills Valley R. Co.*, 33 *Ga.* 466, a subscriber when sued on his subscription agreement relied on the same defense as that interposed in the *Winter* case, supra, but the court held that the alteration of the charter there under consideration did not materially vary the route, and that the stockholder was not released. There is in the opinion, however, a recognition of the rule at that time of force to the effect that a material amendment of the charter will not bind the subscribers without their consent. But this case also arose before the adoption of the Code of 1863, wherein the State for the first time asserted its right to change, modify or alter. The two cases last referred to are therefore in a class to themselves. Next we shall refer to a group of four cases decided after the adoption of the Code of 1863, wherein the State first asserted what we have referred to as the reserved power. In 1866 the General Assembly passed an act incorporating the Atlanta Street Railroad Company, giving it exclusive power to use the streets of Atlanta. In 1872 the General Assembly by an act incorporated the West End and Atlanta Street Railroad Company, giving it all the powers and privileges of the former. The company first chartered filed a bill to restrain the other company from operating any railroad on any street in the City of Atlanta. The court held, among other things, that the Code of 1863 introduced a new element into the law of private corporations in this State, and that all charters granted to private corporations since its adoption are subject to its provisions; that when the company accepted the grant made by the General Assembly it did so with a full knowledge of this general law, as much as if it had been inserted in the act of incorporation; and that the complainant accepted the charter subject to the right of the State to withdraw, modify, or restrict the franchise granted to it, whenever the State should think proper to do so. Furthermore, the court said: "The power to withdraw the entire franchise granted necessarily includes the power to modify it or to restrict the exercise of it. . ." *West End &c. R. Co.* v. *Atlanta Street R. Co.*, 49 *Ga.* 151. A similar ruling was made in *Central Railroad & Banking Co.* v. *State*, 54

*Ga.* 401. The original charter of the company was granted in 1835. The court found that it had in 1872 accepted a new charter. In 1874 the legislature passed an act relating to the taxation of railroads, the effect of which was to impose a higher tax on it than was specified in its act of incorporation. The court held that this could be done, basing its decision on the provision in the Code of 1863 hereinbefore referred to. The fact that the Supreme Court of the United States, in Central R. &c. Co. *v.* Georgia, 92 U. S. 665 (23 L. ed. 757), held that the act of the General Assembly construed in the case now under discussion did not create a new corporation, does not modify the principle ruled in 54 *Ga.* In *State* v. *Atlantic & Gulf R. Co.,* 60 *Ga.* 268, the legal question involved was the same as that in the case last referred to, and a like ruling was made based on the principle of the reserved powers.

The fourth of this group of cases is that of *Macon & Birmingham R. Co.* v. *Gibson,* 85 *Ga.* 1 (11 S. E. 442, 21 Am. St. R. 135). The company was incorporated by an act of the Legislature in 1888, and was given the power to locate and construct its road where it thought proper. In 1889, after the company had located but before it had constructed its road, the General Assembly amended its charter by declaring that the railroad be confined to a particular route on certain prescribed conditions. The court upheld the amendment, and said: "If such an alteration as this in the charter of a corporation can not be made, it is difficult to imagine any material alteration that could be made; and of course, if the reserved power of changing, modifying, or destroying will not embrace material alterations, reservation is useless and worthless." The court there referred to the sections of the Code containing the reservation, and said: "The charter was as much qualified by the terms of the Code above quoted as if these sections of the Code had been incorporated in the charter itself. For the corporation to complain that the legislature did what it reserved the right to do, and did it before any portion of the line had been constructed in Upson County, seems to us wholly without reason." In these four cases this court upheld the reserved power of the State in its full breadth. In every instance the amendment made material changes. It is true that the court was dealing with public-service corporations, and the corporations before us were not; but as we see it that makes no difference in the application of the rule. In

the decision last referred to is quoted with approval what was said by the Supreme Court of the United States in Atlantic &c. Railroad Co. v. Georgia, 98 U. S. 359 (25 L. ed. 185), concerning the effect of the Code provisions on existing charter rights, as follows: "As the greater power includes every less power which is a part of it, the right to withdraw a franchise must authorize a withdrawal of every or any right or privilege which is a part of the franchise. So it was held in *The Central Railroad and Banking Co.* v. *Georgia,* 54 *Ga.* 401, and so it must be held now, especially in view of the statutory provision of the Code, that private corporations are subject to be changed, modified, or destroyed at the will of their creator."

The authorities above referred to and the reasoning on which they are based demonstrate, in our opinion, the correctness of the proposition that where the reserved power existed at the time of their creation, the General Assembly may authorize pre-existing corporations to merge or consolidate upon the affirmative vote of less than all of the stockholders.

There are three other Georgia cases which should be examined, to see whether any of them should constrain us to take a different view. The first is *May* v. *Memphis Branch Railroad Co.,* 48 *Ga.* 109. The railroad was chartered in 1868, with a capital stock of five hundred thousand dollars. In 1871 an act was passed, so amending it as to provide that the company might commence work whenever one hundred thousand dollars had been subscribed. May had subscribed for stock before the amendment to the charter was passed. He was sued on his subscription agreement, pleaded several distinct defenses. The court denied him relief, because it found that he had acquiesced in what the company did, "become bound by the acts of his company, and thereby [became] disabled from setting them up as a defense." It is true that it was stated that "The original contract between the stockholders of a railroad company, as contained in the charter, can not be materially or essentially altered by an amended charter, so as to bind the subscribers thereto without their consent." Dealing with the question in the opinion, Judge Trippe planted himself on the ruling in *Winter* v. *Muscogee R. Co.,* 11 *Ga.* 438, apparently overlooking the fact that the *Winter* case arose before we had any such thing as the reserved powers. What was said on that point was purely obiter, since the

case turned on the question of estoppel. The case of *Memphis Branch R. Co.* v. *Sullivan, 57 Ga.* 240, was another suit for a stock subscription to the same road as that involved in the *May* case, supra. Two of the pleas were similar to those filed by May. The court held that the facts there involved did not show an estoppel; and that the amendment, being material and without his assent, released him from his subscription. No reference was made to the reserved powers, the entire discussion as to the ruling on the latter point being as follows: "Taking it altogether, it is such an alteration as materially affects the contract Sullivan made, and the principle ruled in *Winter* v. *Muscogee Railroad Company,* 11 *Georgia Reports,* 438, will apply to this case." Here again is not the slightest reference to the reserved powers of the State, the fact being apparently overlooked that that important legislation had intervened since the decision in the *Winter* case, and can not be reconciled on principle with the decision in *West End &c. Co.* v. *Atlanta Street R. Co.,* 49 *Ga.* 151, and *Central Railroad &c. Co.* v. *State,* 54 *Ga.* 401, or with *Atlantic & Gulf R. Co.* v. *State,* 60 *Ga.* 268, and *Macon & Birmingham R. Co.* v. *Gibson,* 85 *Ga.* 1 (supra), decided since, all four being by full benches, unless being a suit on a stock subscription makes a rational distinction.

The remaining case is *Snook* v. *Georgia Improvement Co.,* 83 *Ga.* 61 (9 S. E. 1104), another instance where suit was brought on a stock subscription to a railroad incorporated under the general railroad law, the name of which was changed by an act of the Legislature, and other alterations made. The main plea was that when he subscribed it was to the building of a railroad from Atlanta to Hawkinsville, but that by the amendment the route was changed; that the company was a different one from that to the capital stock of which he had subscribed; and therefore that he was released from his subscription agreement. This court upheld him in this contention, declaring that "The doctrine is now well settled that if a charter of a corporation is materially, fundamentally, or radically changed by the legislature, after a person has subscribed for stock therein, without his consent, he is released from such subscription." Also it was said that "while the State, if it reserves the power to do so, can alter and amend the charter, and the corporation itself can not object to the alteration or amendment, yet the State has no power to make any material or essential alteration in the con-

tract between the members themselves and the corporation." Whether the three cases last discussed were decided correctly or not, they may be distinguished from the case at bar, wherein a minority stockholder sought to enjoin a merger, because all the three decisions dealt with the right of the corporation to enforce an agreement to take stock therein. If and when a case reaches this court that involves the same question there dealt with, and a request is made to review and overrule those decisions, that will be the time for an expression of our view as to whether those cases were correctly decided. To do so now would be but uttering words by the way, obiter dicta, because the case now for decision presents a different state of facts. Our conclusion is that the judgment should be *Affirmed. All the Justices concur.*