HARRIET B. ZOBEL et al., as Trustees under the Will of FANNIE VAN RAALTE, deceased, et al., Plaintiffs, *v.* AMERICAN LOCOMOTIVE COMPANY et al., Defendants.

Supreme Court, Special Term, New York County, August 31, 1943.

*Karelsen, Karelsen & Rubin* and *Unger & Pollack* for plaintiffs.

*Theodore Kiendl, Hoyt A. Moore, Noah A. Stancliffe* and *Tyler M. Bartow* for defendants.

WALTER, J. Certain holders of the preferred stock of American Locomotive Company, a New York corporation, here seek to enjoin a proposed consolidation and merger of that corporation and two of its wholly owned subsidiaries, one of which is another New York corporation and the other of which is a Delaware corporation. The action is for a permanent injunction and the present motion is for such an injunction *pendente lite.*

Such preferred stock was issued in or shortly after June, 1901. It is not callable and is entitled to cumulative dividends of 7% per annum. It has voting rights along with the common stock, but the proportion of issued shares of the two classes is such that it now has only 31.43% of the total voting power. The accumulated dividends now unpaid amount to $42.75 per share, a total of $15,046,332.75 for all preferred shares now outstanding. Under the plan sought to be enjoined the holder of each share of preferred stock is to receive one new

share of 7% cumulative preferred stock of the same par value, callable at 115, and 1¾ shares of common stock and $7 in cash; and the holders of the present common stock, which is no-par stock of the stated value of $5, are to receive new certificates for the same number of no-par shares of the stated value of $1 per share. Consummation of the plan as proposed would give the holders of the present preferred stock 53.76% of the total voting power.

It is quite apparent that consummation of the plan will wipe out the preferred stockholders' present first call upon earned surplus and future profits to the extent of the accumulated arrears of their dividends, and thus make possible the payment of dividends upon the common stock at a time certainly much earlier than would be possible without the consolidation; and that result is quite frankly stated in terms which doubtless justify the inference that that is the motivating cause of the proposal for consolidation. It does not follow, however, that for that reason the proposal can be stamped as one solely in the interest of the common stock. The existence of a large amount of unpaid cumulative dividends well may be, and in many instances is, detrimental to the best interests of a company, and no showing is here made which enables the court to say that that is not true in this case. Furthermore, the preferred stockholders' present right to the accumulated arrears is not being taken from them without a consideration moving directly to them individually and collectively. Speaking broadly and in terms of practical results, they are being given, in exchange for that right and such other rights as pertain to their present shares, approximately one sixth of the accumulated arrears of dividends in cash and an additional stock interest in the consolidated company so substantial as to change them collectively from the position of minority to the position of majority stockholders. Whether they will be better off as minority stockholders in a corporation having an immense amount of unpaid cumulative dividends or as majority stockholders in a corporation having no unpaid cumulative dividends is a question of business judgment. It certainly is not a question which a court can attempt to decide for them. The sole question for the court is whether or not the proposal is violative of their legal rights. Is it one which a part of the stockholders legally can force upon those who do not desire it?

The rights of the holders of the preferred stock — their so-called pre-emptive rights, their right to retain their shares as against a call thereof, and their rights as to dividends —

are all purely contractual. If no term of the contract authorizes a change in such rights as originally stated, then they cannot be changed. Statutes in existence when the stock is issued (and perhaps also those in existence when stock is acquired by individual shareholders) are, however, a part of the contract, and if such statutes authorize a change, then any seemingly absolute statement of such rights in other parts of the contract necessarily is to be read as subject to the changes so authorized, and such rights cannot properly be described as "vested" in any sense which implies that they are not subject to such changes. That principle is plain and elementary. A few authorities may be cited: Fletcher, Cyclopedia Corporations (Perm. ed.) Vol. 15, § 7063; 14A C. J., Corporations, §§ 3640–3641; 19 C. J. S., Corporations, § 1611; 7 R. C. L., Corporations, §§ 141–142; *Matter of Interborough Consolidated Corp.*, 277 F. 455, 457; *Kirby* v. *Saginaw Hotels Co.*, 253 Mich. 308; *Barnett* v. *D. O. Martin Co.*, 191 Ga. 11.

At least since 1890, long before the incorporation of American Locomotive Company, the statutes of New York have authorized the consolidation of corporations upon the vote of two thirds of the stockholders, and such statutes expressly provide that the agreement of consolidation may prescribe the terms and conditions of the consolidation, including the manner of distributing the stock of the consolidated company. (L. 1890, ch. 567 [Business Corporations Law, §§ 13, 14], as amd. by L. 1892, ch. 691, L. 1895, ch. 671, L. 1901, ch. 520, L. 1909, ch. 12 [Business Corporations Law, §§ 7, 8]; Stock Corporation Law of 1923, § 86.) Those statutes authorized the consolidation of New York corporations. It apparently was not until 1934 that the consolidation of New York corporations with foreign corporations was expressly authorized. (Stock Corporation Law, 1923, § 91, as added by L. 1934, ch. 611.) Plaintiffs do not show that they or those they represent acquired their stock before the enactment of the 1934 statute, but even an assumption that they did not does not in any way aid them. The substantial and controlling consideration is that they at least took subject to the possibility of a change in their rights by a consolidation of their corporation with another corporation, and whether the change come by reason of a consolidation with another New York corporation or by reason of a consolidation with a foreign corporation is of no substantial consequence.

Consequently, without considering (a) whether the correct rule is that stockholders take subject to such statutes as exist

when they acquire their stock or subject only to such as existed when the corporation issued the stock, or (b) whether the State's reserved power to alter, amend, or repeal charters is so comprehensive that they even take subject to a power to consolidate created after they became stockholders, I conclude that, as all rights pertaining to the present preferred stock of American Locomotive Company always have been subject to such changes as may be effected by a consolidation of that company with one or more other companies under an agreement which prescribes the terms and conditions of the consolidation and the manner of distributing the stock of the consolidated company, the holders of such stock are bound, by the very terms of their contract, by such consolidation as two thirds of the stockholders, acting within the limits prescribed by the statutes, shall approve.

Nothing in *Davison* v. *Parke, Austin & Lipscomb, Inc.* (285 N. Y. 500), or in the cases there cited, is even remotely suggestive of anything to the contrary. In the *Davison* case the court quite emphatically states that we are not to be misled by calling the stockholder's rights " vested " and are to determine in each case what the Legislature has lawfully prescribed, and there certainly is no analogy between the authority to classify shares which was involved in the *Davison* case and the authority to consolidate which is involved in the case at bar.

Plaintiffs make the contention that the authority to consolidate which the statute confers does not give authority to consolidate with wholly owned subsidiaries, but the courts cannot read such an exception into the statute. They also urge that a consolidation with wholly owned subsidiaries is not in reality a consolidation but a mere misnomer for a recapitalization. There again, the answer is that the Legislature has authorized consolidation. Identically the same contentions have been repeatedly rejected in other States under identical statutes. (*Federal United Corp.* v. *Havender,* 11 A. 2d [Del.] 331; *Porges* v. *Vadsco Sales Corp.,* 32 A. 2d [Del. Ch.] 148; *Hubbard* v. *Jones & Laughlin Steel Corp.,* 42 F. Supp. 432; *Hottenstein* v. *York Ice Machinery Corp.,* 45 F. Supp. 436.) Indeed, those cases in reality cover substantially all the questions here raised and answer substantially all the contentions here pressed with a wealth of persuasive reasoning.

Some point is made by plaintiffs that the proposal is invalid because in the notice submitting it to the stockholders there is a statement that the board of directors reserves the right to withdraw and abandon the plan should conditions arise which

328

in its judgment would make it not in the best interests of the company to consummate the plan. I perceive nothing illegal in that, and nothing which aggrieves plaintiffs. Dissenting stockholders may object and demand payment for their stock and apply for the appointment of appraisers within sixty days thereafter. If the plan be then abandoned they will have won what they claim to esteem a victory, without court aid.

In holding that as respects consolidation the stockholders take subject to the action of two thirds of their number, I of course am not to be understood as holding that a court of equity could not intervene where fraud or bad faith is shown. No such showing is made in the papers now before the court. True, plaintiffs say that the plan is so unfair to the preferred stockholders, in favor of the common stockholders, that it amounts to fraud, but, as has been indicated above, that is here nothing more than an emphatic way of saying that as a matter of business judgment plaintiffs would rather keep what they now have. No actual bad faith is shown, and neither is there such unfairness, if any, as would justify an inference of fraud.

The motion for an injunction *pendente lite* is accordingly denied.